UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY FOR PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., SCRIPPS MEDIA, INC., and TEGNA INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> TODD ROKITA, *in his official capacity as Attorney General of Indiana, and* RYAN MEARS, *in his official capacity as Marion County Prosecutor*, and KERRY FORESTAL, *in his official capacity as Marion County Sheriff*, <br><br> *Defendants*. | CASE NO. 1:23-cv-1805-JRS-MG |

## DECLARATION OF RYAN THEDWALL

I, Ryan Thedwall, declare as follows:

1. I am over the age of 18. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction in the above-captioned matter. I have personal knowledge of the matters stated herein.

1

2. I am a photojournalist at WTHR in Indianapolis, Indiana, a broadcast television station owned by TEGNA, Inc. I have been employed, full-time, as a photojournalist at WTHR-TV for more than a decade. Before joining WTHR-TV, I worked as a photojournalist at WNDU, a television station in South Bend, Indiana, and in freelance television production.

3. At WTHR, I work with both the investigative team and on general assignment. When I am on general assignment, I cover breaking news around Indianapolis, which often brings me into contact with law enforcement officers.

4. In a typical work week, I usually come into contact with law enforcement officers on the job three or four times. That can include, for example, when I am covering crime scenes or other breaking news events, press conferences, or events, like football games, that draw large crowds.

5. When covering newsworthy events, I will get as close as I can—well within twenty-five feet—to capture high-quality sound and video, speak to law enforcement officers about what's going on, and hear what people on the scene are saying to each other.

6. When I'm covering newsworthy events, it would be much harder—and sometimes impossible—for me to do my job from 25 feet away. To capture video footage, for example, I often need to be within 15–20 feet, if not closer, to get a clear picture of what's going on or to avoid an obstructed view.

7. To hear and record audio, I usually need to be even closer—within a normal conversational distance. Beyond that, it's usually too difficult to capture usable sound.

8. In addition, in my experience, I am able to gather more information at a scene when I ask questions of law enforcement or witnesses from a close distance because it feels more conversational.

9. I first heard about HB 1186 through WTHR's coverage of the law when it was proposed in the statehouse, before it passed. Since HB 1186 was enacted, I've talked about it with other journalists who, like me, are concerned about what the law will mean for our work. I also received emails from management at WTHR telling us about the law after it passed.

10. Since HB 1186 was enacted, there have been instances when I was covering a story where I was told by law enforcement to move back to a distance that got in the way of or prevented me from doing my job effectively.

11. For example, in mid-October 2023, I was called up to work in the middle of the night to report from the scene of a shooting at a bar involving an off-duty law enforcement officer. When I arrived, I began filming the scene outside the bar. An officer told me to move back to where other journalists had been crowded into an area roughly the size of a parking space. I would estimate that area was approximately 25 feet or more away from where I was initially standing.

3

12. From the area where I was directed to stand, a police car blocked me from having a clear view of what was going on outside the bar. I wanted to get a better view of the scene, but I also didn't want to spend the night in jail so I stayed back from the scene—even though I was not in law enforcement's way or obstructing their investigation when I was asked to move. I could see from where I was standing that officers were allowing bystanders who were not working as journalists to get closer to the scene.

13. In my experience, in breaking news situations it is common for law enforcement to order members of the press to move back to what they often call a "media staging area" that might be as far as several blocks away from the scene or other newsworthy event that we are trying to cover, even when members of the public who are not there as journalists are allowed to get closer—and even film on their phones. In my experience, law enforcement will single out people, like me, that they can see have television cameras and require them to stand further away.

14. In general, I find it difficult and sometimes impossible to do my job as a journalist effectively from a media staging area. I cannot, from a media staging area, gather news and information myself by, for example, striking up a conversation with a law enforcement officer on the scene, or by recording audio and video of what is happening at the scene. It is usually my practice as a journalist to move around when I'm on a scene so that I can take pictures from

4

different angles, see all sides, and talk to as many people as I can. When I do this, I make a conscious effort to avoid interfering with officers' ability to do their jobs.

15. When reporting in those kinds of situations, following a law enforcement order to move back at least 25 feet, or to move to a media staging area, will mean that I will lose access to newsworthy information. I can never know what newsworthy information I'm missing when I am forced to move away or move to a media staging area. In those situations, my reporting from the scene is limited to the information that law enforcement decides to share.

16. Since HB 1186 went into effect, I've continued to interact with law enforcement on a regular basis in connection with my work as a photojournalist for WTHR, and I frequently have the law on my mind when I'm trying to gather news. I've continued to do my job, but I'm conscious that if I don't comply quickly with law enforcement requests to move I could be arrested, even when I haven't interfered with the law enforcement officer's ability to perform their duties.

17. I'm also concerned about HB 1186 because, when I'm reporting, I frequently find myself in situations where it would be difficult or impossible to comply with an order to move at least 25 feet back. For example, when I cover events happening indoors in enclosed spaces, or when I cover crowded outdoor events like protests, there is often not enough space to move back, let alone 25 feet back. Recently, for instance, I covered a scuffle that broke out outside a courtroom

5

in the Marion County courthouse. I would estimate that I was within 5–10 feet of the scene. Because of the enclosed space, I would have had nowhere to go if a law enforcement officer had ordered me to move at least 25 feet away.

18. Also, when law enforcement officers are stationed throughout a large crowd—something I've seen at major football games that I've covered—I don't know how I would move at least 25 feet away from one officer without ending up within 25 feet of another officer.

19. In addition, in my experience, law enforcements officers will give contradictory guidance to members of the press covering events, such as one officer telling journalists they can approach and another officer telling journalists to move back. That also makes me concerned about HB 1186 because I could find myself at risk of violating the law while covering a newsworthy event because of confusing or contradictory directions given by law enforcement even though I am attempting to comply with law enforcement directions.

20. As a professional photojournalist, I expect that my work will continue to bring me within 25 feet of law enforcement officers several times each week for the foreseeable future. Even though I take care to avoid interfering with officers' duties, I am concerned that HB 1186 will continue to negatively interfere with my ability to do my job, which is to gather and report newsworthy information.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 10, 2023 in Indianapolis, Indiana.

_____

Ryan Thedwall

Prepared by:

Katie Townsend
Reporters Committee for Freedom of the Press
1156 15th St. NW Suite 1020
Washington, D.C. 20005

7