UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY FOR PROFESSIONAL JOURNALISTS, INDIANOPOLIS STAR, NEXSTAR MEDIA INC., SCRIPPS MEDIA, INC., and TEGNA INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> TODD ROKITA, *in his official capacity as Attorney General of Indiana, and* RYAN MEARS, *in his official capacity as Marion County Prosecutor*, and KERRY FORESTAL, *in his official capacity as Marion County Sheriff*, <br><br> *Defendants*. | CASE NO. 1:23-cv-1805-JRS-MG |

## DECLARATION OF SCOTT HUMS

I, Scott Hums, declare as follows:

1. I am over the age of 18. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction in the above-captioned matter. I have personal knowledge of the matters stated herein.

1

2. I am the Director of Content at WTHR in Indianapolis, Indiana, a broadcast television station owned by TEGNA, Inc. I have been in my current position for over a year, and I have worked at WTHR for approximately eight years. I also have personal experience with photojournalism, having worked as a news photographer for approximately seven years earlier in my career.

3. In my role as Director of Content at WTHR, I oversee the work of WTHR reporters and photojournalists and make decisions about where to allocate newsroom resources.

4. I oversee the work of reporters and photojournalists at WTHR—many of them general assignment reporters—who cover breaking news in Marion County, Indiana and who, as part of that work, come into close contact with law enforcement officers multiple times every day. Our coverage of recent police-involved shootings, for instance, has often involved covering law enforcement officers at close range. Our reporters also routinely encounter officers at scheduled events, press conferences, and at crime scenes.

5. When I instruct our reporters and photojournalists about best practices for covering breaking news, I emphasize a famous rule in broadcast newsgathering: "Zoom with your feet." While our journalists are required to take care to avoid interfering with law enforcement officers' carrying out their official duties, zooming in on your subject with a camera is not a substitute for getting

2

physically close enough to an event so that you can see and hear things more clearly, capture quality audio and video, and get a clear perspective on what's happening.

6. From my own experience working as a news photographer and in newsroom management, I know you generally need to be within 5-10 feet away to record audio that is consistently acceptable for broadcast. If there is background noise, you need to be even closer. I also know from experience that professional journalists are capable of working from that distance without negatively impacting or interfering with law enforcement officers.

7. High-quality audio and visuals (including photos and video footage), are uniquely valuable to WTHR viewers and, accordingly, to WTHR; both help transport viewers to what is happening on the scene. That's especially true for breaking news, which is a strategic focus for WTHR because we know that our audiences want accurate, up-to-the minute coverage of the issues affecting their community—especially law enforcement issues that might affect their safety.

8. Our journalists also need to be close to get to the truth. With police-involved shootings, for instance, it has been my experience that, if our reporters are too far away to get a clear view of the scene, they have no way of knowing what questions to ask to see if law enforcement's initial account of what happened matches the facts on the ground.

3

9. I learned about HB 1186 when it was introduced in early 2023. WTHR's newsroom leadership—myself included—was immediately concerned about the impact the law would have on our journalists and their ability to do their jobs effectively. Once HB 1186 was signed into law, I worked with other members of WTHR leadership to make sure our reporters and photojournalists were aware of it.

10. Since the law took effect, reporters and photographers that I supervise have repeatedly expressed concerns about how HB 1186 impacts their ability to gather the news or asked me for guidance about how the law would apply to a particular set of circumstances. I have been a part of efforts to educate the WTHR newsroom about HB 1186. We advise our reporters and photojournalists to comply with the law and to avoid getting in the way of law enforcement officers doing their jobs, but it has been challenging to give journalists workable guidance on how to estimate twenty-five feet when out in the field, what to do if an officer walks towards you after asking you to step back, what to do if you don't have enough space to back up, and what to do when officers give conflicting orders.

11. Based on my own experience and the experiences of the WTHR journalists I supervise, I would estimate that a member of the WTHR newsroom is asked to step back or move away from a law enforcement officer as often as once a day. Journalists I supervise are often asked to stay back or move to a different

4

area—sometimes to what is often called a "media staging area"—even when they can see members of the public being permitted to get closer to the scene.

12. I have reviewed examples of stories broadcast by WTHR since HB 1186 was enacted in which viewers can clearly see that members of the public have been allowed to get closer to an event than where our reporters were directed to stand. *See Arrest Made in Officer-Involved Shooting on Indy's East Side*, WTHR (Oct. 16, 2023), https://www.youtube.com/watch?v=SWU-ztyHCVc.

13. Because of this, I have sometimes advised WTHR journalists to use their phones to cover an event instead of a large camera so that they can blend in with the public and avoid being targeted by law enforcement with an order to move back or away from the scene.

14. Because WTHR's coverage areas will continue to bring our reporters and photojournalists within 25 feet of law enforcement officers virtually every day for the foreseeable future, I am concerned that HB 1186 will continue to be used to arbitrarily prevent our journalists from getting close enough to gather the information they need to inform the public, despite the fact that our journalists are careful not to obstruct law enforcement officers' ability to carry out their official duties. And because I have personal knowledge of incidents, as described above, in which our journalists have been singled out when members of the public were

5

not, I am also concerned that HB 1186 could be used to single out our journalists relative to other members of the press depending on officers' perception of WTHR.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 10, 2023 in Indianapolis, Indiana.

*Scott Hums*

Scott Hums

Prepared by:

Katie Townsend
Reporters Committee for Freedom of the Press
1156 15th St. NW Suite 1020
Washington, D.C. 20005