UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY FOR PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., SCRIPPS MEDIA, INC., and TEGNA INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> TODD ROKITA, *in his official capacity as Attorney General of Indiana,* and RYAN MEARS, *in his official capacity as Marion County Prosecutor,* and KERRY FORESTAL, *in his official capacity as Marion County Sheriff,* <br><br> *Defendants.* | CASE NO. 1:23-cv-1805-JRS-MG |

**DECLARATION OF REX SMITH**

I, Rex Smith, declare as follows:

1. I am over the age of 18. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction in the above-captioned matter. I have personal knowledge of the matters stated herein.

1

2. I am a reporter and anchor at WANE 15, a broadcast television news station owned by Nexstar Media, Inc., that covers Fort Wayne, Indiana, and surrounding areas. I have been employed full-time as a journalist at WANE 15 for approximately two years. Before joining WANE 15, I was a sports anchor at a television news station in Omaha, Nebraska. I also worked at a different television news station in Fort Wayne before joining WANE 15.

3. At WANE 15, I work on the general assignment team. I report on events happening throughout the city, big and small. For example, I have reported on breaking news about a shooting, profiles of prominent citizens in Fort Wayne, and issues with trash collection.

4. In a typical work week, I usually come into contact with law enforcement officers on the job at least once or twice. That can happen when I'm covering crime scenes and breaking news, but also when I'm working on special reports on broader issues that involve law enforcement.

5. When I'm covering news that puts me in close proximity to law enforcement, I often need to get close to officers. If I am covering a fire, for instance, and there are police on the scene, I'll be right near them. I need to get that close to get the best quality video I can. To get good quality audio, I also need to be well within twenty-five feet.

6. I first heard about HB 1186 through a discussion with a colleague in the newsroom. We talked about our concerns about how it might impact our work as journalists, including our ability to effectively cover events where law enforcement are present.

7. I am also concerned about how HB 11086 will impact the bystander-contributed videos of law enforcement that members of the public routinely send to us to further our journalistic work. We broadcast bystander-contributed videos all the time, particularly when we are reporting on fires or crashes in rural areas that are hard to get to quickly from Fort Wayne. Without those bystander-contributed videos, our team would often have no way of covering the key, early moments of a newsworthy event before our reporters are able to reach the scene. Many of those videos are taken within twenty-five feet of law enforcement officers.

8. For example, our team recently aired a video captured by a bystander's cell phone of a law enforcement officer body slamming a man he had pulled over. Our team not only aired the video the bystander sent to us but also continued reporting on the story ourselves. *See* Lydia Reuille and Clayton McMahan, *Court Docs: Officer Performed 'Hip Toss,' Man 'Fell to the Ground' in Viral Video*, WANE 15 (Jan. 24, 2023), https://perma.cc/2VZC-RQSU. Among other things, we submitted a public records request to the Fort Wayne Police Department to obtain bodycam footage of the incident. *See* Clayton McMahan,

3

*Fort Wayne Police Department Releases Bodycam Footage From Viral 'Hip Toss' Arrest in Late January*, WANE 15 (May 23, 2023), https://perma.cc/VY49-BATX.

9. If our source—the bystander who contributed the video—had been forced to stand at least twenty-five feet away, we likely would not have obtained video of a high enough quality to air, and we probably wouldn't have been able to pursue subsequent stories about the incident. The public would have lost out on the opportunity to understand what happened. In light of what I've heard about HB 1186 being used against bystanders filming the police, I worry HB 1186 will prevent sources from bringing us those types of videos—which play a key role in our reporting—in the future.

10. When my work brings me in close proximity to law enforcement officers, I make sure to stay out of their way when they need space. If I'm not doing anything to obstruct their work, I believe that I'm within my rights to do my work, which includes obtaining video and audio of the scene.

11. If HB 1186 were enforced against me, I think I would have difficulty complying, including because I would have a very difficult time estimating a distance of twenty-five feet without a tape measure. And because the law is so vague, it isn't clear when someone can be ordered to back up to twenty-five feet, and what would prompt an officer to decide to enforce the statute.

12. I'm also concerned about what HB 1186 will mean given other changes I've noticed in law enforcement's attitudes towards the press. Though I think I have a good relationship with the Fort Wayne Police Department, in the past few years I've noticed that it has become harder to get information about newsworthy events from them. Sources are less willing to talk to journalists, and Public Information Officers are more reluctant to release information. Given those experiences, I worry that HB 1186 will be used as another tool to keep information about law enforcement activities away from the public. That will make it harder for me to do my job as a journalist, which requires holding officials accountable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 27, 2023 in Fort Wayne, Indiana.

Rex Smith

Prepared by:

Katie Townsend
Reporters Committee for Freedom of the Press
1156 15th St. NW Suite 1020
Washington, D.C. 20005