UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **Reporters Committee for Freedom of the Press**, **Indiana Broadcasters Association**, **Indiana Professional Chapter of the Society of Professional Journalists**, **Indianapolis Star**, **Nexstar Media Inc.**, **Scripps Media, Inc.**, and **Tegna Inc.**, *Plaintiffs*, v. **Todd Rokita**, in his official capacity as Attorney General of Indiana, **Ryan Mears**, in his official capacity as Marion County Prosecutor, and **Kerry Forestal**, in his official capacity as Marion County Sheriff, *Defendants*. | Case No. 1:23-cv-1805 |

## Defendants' Joint Notice of Supplemental Authority

Defendants Todd Rokita, in his official capacity as Attorney General of Indiana, Ryan Mears, in his official capacity as Marion County Prosecutor, and Kerry Forestal, in his official capacity as Marion County Sheriff (collectively, "**Indiana**"), submit as supplemental authority the recently-issued Opinion and Order in *Nicodemus v. City of S. Bend*. No. 3:23cv744 DRL, 2024 U.S. Dist. LEXIS 6710 (N.D. Ind. Jan. 12, 2024). The *Nicodemus* court, addressing numerous questions raised in this case, found that Ind. Code § 35-44.1-2-14 ("**Buffer Law**") "is not unconstitutional by virtue of being facially overbroad." *Id.* at *2. "It doesn't target speech. It penalizes approaching a lawfully-engaged officer (after an order), not recording one." *Id.* at *24.

From a factual perspective, the *Nicodemus* ruling informs this case in at least two important respects. First, the court found that the facts of the event in question "didn't burden Mr.

Nicodemus's First Amendment rights,"[1] *id.* at *22, which is relevant to the factual history of the Buffer Law's enforcement and how many examples exist—if any—of unconstitutional enforcement. Second, the court found that "[n]ot even [Mr. Nicodemus'] recording . . . suffered. . . . [H]e easily captures events much greater than 25 feet and even the audio of officers speaking at a greater distance." *Id.* at *21–22. This is relevant as *Nicodemus* has been, in briefing on the present case, one of the primary examples of how drastically—if at all—the Buffer Law's actual enforcement affects actual recording.

The *Nicodemus* opinion is also relevant to numerous legal issues that have been raised in this case.

First, the court noted the important rights that law enforcement officers possess for the furtherance of their duties. Although recognizing that the First Amendment includes a right to record police conduct, *id.* at *7–8, the court observed that under *ACLU v. Alvarez*, "it 'goes without saying that the police may take all reasonable steps to maintain safety and control . . . . [Though] an officer surely cannot issue a "move on" order to a person *because* he is recording,

---

[1] The court notes at this point in its opinion that Mr. Nicodemus therefore did not bring an as-applied challenge. *Id.* at *22. As noted in Indiana's briefing, Mr. Nicodemus had originally purported to bring an as-applied challenge, *Nicodemus*, No. 3:23-cv-00744 (N.D. Ind. Aug. 8, 2023), Dkt. 1, 7 (requesting that the court "[d]eclare that Indiana Code § 35-44.1-2-14 is unconstitutional as applied to plaintiff") (cited at, *e.g.*, Defs.' Br. Supp. Joint Mot. Dismiss, Dkt. 26, 18). However, the court notes that "Mr. Nicodemus confirmed at oral argument that he advances no other challenge" than facial. *Nicodemus*, 2024 U.S. Dist. LEXIS 6710 at *9 n.4. The *Nicodemus* court therefore did not come to a final judgment regarding the issues raised in Mr. Nicodemus' eventually-dropped as-applied challenge. Because Indiana's argument that this Court should dismiss Plaintiffs' as-applied claims on the basis of collateral estoppel or the first-filed rule were contingent on the "pending resolution of *Nicodemus*," Defs.' Br. Supp. Joint Mot. Dismiss, Dkt. 26, 14, Indiana now withdraws these arguments. In doing so, Indiana waives no other arguments. Indiana maintains, for example, its argument that Plaintiffs' *facial* challenges remain barred by *Nicodemus*, and all arguments demonstrating that *Nicodemus* does show the frailty of *all* of Plaintiffs' claims.

the police may order bystanders to disperse for reasons related to public safety and order and other legitimate law-enforcement needs.'" *Id.* at *8 (alteration in original) (quoting *Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012)).

Second, the court found that the Buffer Law is directed at conduct (specifically, encroachment), not speech, noting with several examples that it "affords law enforcement officers the uninterrupted and unimpeded ability to do their jobs." *Id.* at *12–13. The opinion goes into detail on how the law advances these interests, and the compelling nature thereof. *Id.*

Third, the court found that the Buffer Law both serves such needs and that several standards are "built within the law," limiting when it may be enforced. *Id.* at *11–12.

Fourth, the court noted that the Buffer Law "isn't a regulatory scheme for prior approval of the right to record that requires more workable standards." *Id.* at *12 (citing *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988); *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

Fifth, the court, addressing the standard for a facial challenge, found that neither the plaintiff, nor the court itself in the hypothetical scenarios it had "offered for consideration," had managed to offer a "substantial number of" "realistic" unconstitutional applications "in light of the law's plainly legitimate sweep," noting that "should one such rare situation materialize, an as-applied challenge would" suffice. *Id.* at *17 (citations omitted).

Sixth, the court found that the Buffer Law's effect on the right to record police activity is, "at most," "incidental—not [] substantial[,]" *id.* at *18, citing numerous cases establishing that when a law regulates conduct rather than speech, an incidental effect on speech is permissible, *id.* at *18–19. "Never once," the court found, "does [the Buffer Law] permit law enforcement to stop the public's ability to record." *Id.* at *19. To the contrary, the court observed that recording will

rarely be meaningfully hampered even when the buffer law is employed, noting the array of technology available to the ordinary citizen, rendering "rather strained" the argument "that citizens will suffer a substantial burden on their ability to record meaningfully." *Id.* at *19–20.

Furthering this point, the court stated, "The times in which two things are true—that a law enforcement officer has no legitimate interest in situating a citizen 25 feet away while the citizen's recording suffers at that distance—will be scarce, not common." *Id.* at *20. The court noted that the Buffer Law's 25-foot distance is the "common width of a two-car garage . . . or just small steps beyond an NBA three-point line," which does not create "a substantial burden on the right to record. Watchers of all sorts can still point out a foul observing from distances at 25 feet, and even greater, and can still hear a host of remarks." *Id.* Furthermore, "nothing forecloses a concerned citizen from selecting innumerable positions outside the 25-foot radius from the officer to record. . . . Every square inch of public space that is this short distance from a lawfully-engaged officer is fair game as an alternative location for recording." *Id.* at *20–21.

Seventh, the court found that potential arbitrary enforcement does not alter any of these conclusions, finding that no one "has a right to put a mic" or a camera in the face of an officer, witness, or victim. *Id.* at *21. Importantly, the court also found that the factual record, particularly the video that the plaintiff actually did capture, "belies" claims of "difficulty in capturing activity greater than 25 feet away. Throughout the video, he easily captures events much greater than 25 feet and even the audio of officers speaking at a greater distance." *Id.* at *21–22.

Eighth, the court addressed audio recording—both the extent to which it is affected and the legal import thereof—finding that the Buffer Law does not "foreclose[] . . . audiovisually recording conversations that occur openly" and that "not all conversations in public places are

entitled to be recorded." *Id.* at *13 (citations omitted). The opinion points out the numerous ways in which the interests served by the Buffer Law reflect this limitation on the right to record, preserving confidential information and protecting "citizens from . . . inappropriate disclosure of confidential investigative facts," *id.*, as well as "dissipat[ing] the risk of exposure or marginalization of a victim who might be endangered or embarrassed from immediately adjacent recording" and protecting other privacy interests, *id.* at *14 (citations omitted).

The court also, in two ways, addressed how the Buffer Law should be analyzed in light of other Indiana laws. Specifically, ninth, the court observed, "One might say then the State of Indiana promoted more recording—greater First Amendment access and expression—than less by amending" a law that permitted police to establish a 150-foot perimeter in certain situations, reducing the permitted perimeter to 25 feet, "while also enacting the buffer law." *Id.* at *15.

And tenth, the court noted that "[n]ot all discussions with witnesses, informants, or victims will occur in a set perimeter under Indiana Code § 35-44.1-4-2, or be deemed interfered with under Indiana Code § 35-44.1-4-10," thus finding that the Buffer Law covers legitimate needs that are not addressed by other law. *Id.* at *16. The court specifically noted that numerous circumstances, such as "foot pursuits . . . [and] active shooter scenarios," would not necessarily allow for a set perimeter like that established by police tape, and the Buffer Law accommodates such needs "with but incidental effects on the public's ability to record." *Id.* (citing *Branzburg v. Hayes*, 408 U.S. 665, 684-85, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972)).

These factual and legal conclusions are immediately relevant to this case, in which the import of *Nicodemus* has been argued at length. Accordingly, Indiana submits the *Nicodemus* opinion as supplemental authority.

Dated: January 18, 2024                    Respectfully Submitted,

| | |
|---|---|
| OFFICE OF CORPORATION COUNSEL<br>John P. Lowrey, Ind. Bar No. 29349-53<br>Deputy Chief Litigation Counsel<br>200 E. Washington Street, Suite 1601<br>Indianapolis, Indiana 46204<br>T: (317) 327-4055<br>F: (317) 327-3968<br>john.lowrey@indy.gov<br>*Counsel for Kerry Forestal* | Theodore E. Rokita<br>Indiana Attorney General<br>Ind. Bar No. 18857-49<br><br>By:<br>/s/ James Bopp, Jr.<br>James Bopp, Jr., Ind. Bar No. 2838-84<br>Taylor Shetina, Ind. Bar No. 37887-45<br>THE BOPP LAW FIRM, PC<br>The National Building<br>1 South Sixth Street<br>Terre Haute, Indiana 47807<br>Telephone: 812/232-2434<br>Facsimile: 812/235-3685<br>jboppjr@aol.com<br>tshetina@bopplaw.com<br>*Attorneys for Defendants Todd Rokita and Ryan Mears* |