

# UNITED STATES DISTRICT COURT
## Southern District of Indiana

### Kristine L. Seufert, Clerk of Court

Birch Bayh Federal Building
& U.S. Courthouse, Room 105
46 East Ohio Street
Indianapolis, IN  46204
(317) 229-3700

U.S. Courthouse, Room 104
921 Ohio Street
Terre Haute, IN 47807
(812) 231-1840

Winfield K. Denton Federal Building
& U. S. Courthouse, Room 304
101 NW Martin Luther King Blvd.
Evansville, IN 47708
(812) 434-6410

Lee H. Hamilton Federal Building
& U.S. Courthouse, Room 210
121 West Spring Street
New Albany, IN 47150
(812) 542-4510

October 25, 2024

Emily Hockett
Reporters Committee for Freedom of the Press
1156 15th St. NW
Suite 1020
Washington, DC 20005

Thomas Pratt
Office of Indiana Attorney General
302 West Washington St.
IGCS - 5th Floor
Indianapolis, IN 46204

RE:  REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS v. TODD ROKITA

CAUSE NO:  1:23-cv-01805-JRS-MG

Dear Appellant and Appellee:

Please be advised that the Notice of Appeal filed in 1:23-cv-01805-JRS-MG has been forwarded to the United States Court of Appeals for the Seventh Circuit. The Clerk of the Seventh Circuit will assign an appellate case number, docket the appeal, and notify case participants of the Seventh Circuit case number assigned to this matter.

Please review Seventh Circuit Rule 10 (enclosed) for guidance regarding record preparation.

Please contact the Clerk's office with any questions or concerns.

Sincerely,
Kristine L. Seufert
Clerk of Court

By Karen Angermeier, Deputy Clerk
8122311842

## Selected Rules for Reference

**CIRCUIT RULE 10. Preparation and Accessibility of Record in District Court Appeals**

**(a) Record Preparation Duties.**

**(1) Within 14 days of filing the notice of appeal the district court must ensure the district court docket is complete and made available electronically to the court of appeals.**

**(2) The clerk of the district court must prepare and hold any confidential record or exhibit not available electronically on the district court docket until requested by the court of appeals.**

**(3) Counsel must ensure, within 21 days of filing the notice of appeal, that all electronic and non electronic documents necessary for review on appeal are on the district court docket.**

(b) *Correction or Modification of Record.* A motion to correct or modify the record pursuant to Rule 10(e), Fed. R. App. P., or a motion to strike matter from the record on the ground that it is not properly a part thereof must be presented first to the district court. That court's order ruling on the motion must be included as part of the record and a notice of the order must be sent to the court of appeals.

(c) *Order or Certification with Regard to Transcript.* Counsel and court reporters are to utilize the form prescribed by this court when ordering transcripts or certifying that none will be ordered. For specific requirements, see Rules 10(b) and 11(b), Fed. R. App. P.

(d) *Ordering Transcripts in Criminal Cases.*

(1) *Transcripts in Criminal Justice Act Cases.* At the time of the return of a verdict of guilty or, in the case of a bench trial, an adjudication of guilt in a criminal case in which the defendant is represented by counsel appointed under the Criminal Justice Act (C.J.A.), counsel for the defendant must request a transcript of testimony and other relevant proceedings by completing a C.J.A. Form No. 24 and giving it to the district judge. If the district judge believes an appeal is probable, the judge must order transcribed so much of the proceedings as the judge believes necessary for an appeal. The transcript must be filed with the clerk of the district court within 40 days after the return of a verdict of guilty or, in the case of a bench trial, the adjudication of guilt or within seven days after sentencing, whichever occurs later. If the district judge decides not to order the transcript at that time, the judge must retain the C.J.A. Form No. 24 without ruling. If a notice of appeal is filed later, appointed counsel or counsel for a defendant allowed after trial to proceed on appeal in forma pauperis must immediately notify the district judge of the filing of a notice of appeal and file or renew the request made on C.J.A. Form No. 24 for a free transcript.

(2) *Transcripts in Other Criminal Cases.* Within 14 days after filing the notice of appeal in other criminal cases, the appellant or appellant's counsel must deposit with the court reporter the estimated cost of the transcript ordered pursuant to Rule 10(b), Fed. R. App. P., unless the district court orders that the transcript be paid for by the United States. A non-indigent appellant must pay a pro rata share of the cost of a transcript prepared at the request of an indigent co-defendant under the Criminal Justice Act unless the district court determines that fairness requires a different division of the cost. Failure to comply with this paragraph will be cause for dismissal of the appeal.

(e) *Indexing of Transcript.* The transcript of proceedings to be part of the record on appeal (and any copies prepared for the use of the court or counsel in the case on appeal) must be bound by the reporter, with the pages consecutively numbered throughout. The transcript of proceedings must contain a suitable index, as well as the following information:

(1) An alphabetical list of witnesses, giving the pages on which the direct and each other examination of each witness begins.

(2) A list of exhibits by number, with a brief description of each exhibit indicating the nature of its contents, and with a reference to the pages of the transcript where each exhibit has been identified, offered, and received or rejected.

(3) A list of other significant portions of the trial such as opening statements, arguments to the jury, and instructions, with a reference to the page where each begins.

When the record includes transcripts of more than one trial or other distinct proceeding, and it would be cumbersome to apply this paragraph to all the transcripts taken together as one, the rule may be applied separately to each transcript of one trial or other distinct proceeding.

(f) *Presentence Reports*. The presentence report is part of the record on appeal in every criminal case. The district court must maintain this report under seal, unless it has already been placed in the public record in the district court. If the report is under seal, the report may not be included in the appendix to the brief or the separate appendix under Fed. R. App. P. 30 and Circuit Rule 30. Counsel of record may review the presentence report but may not review the probation officer's written comments and any other portion submitted in camera to the trial judge.

(g) *Effect of Omissions from the Record on Appeal*. When a party's argument is countered by a contention of waiver for failure to raise the point in the trial court or before an agency, the party opposing the waiver contention must give the record cite where the point was asserted and also ensure that the record before the court of appeals contains the relevant document or transcript.

NOTE:   The complete Federal Rules of Appellate Procedure & Rules of the 7th Circuit Court of Appeals are available at: http://www.ca7.uscourts.gov/Rules/Rules/rules.pdf

## THE SETTLEMENT CONFERENCE PROGRAM
## U.S. COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Pursuant to Rule 33 of the Federal Rules of Appellate Procedure[1] and Circuit Rule 33, the Court conducts conferences with counsel and clients to encourage and facilitate the settlement of civil appeals. Rule 33 conferences are conducted in all types of fully-counseled civil appeals except immigration, social security, habeas corpus, prisoners' civil rights, sentencing, and mandamus cases. The Court spontaneously notices most eligible appeals for Rule 33 conferences. Attorneys for one or more parties may also request that a conference be conducted in any eligible case.

Counsel and clients are well-advised to explore opportunities for settlement at the appellate level.Regardless of how unlikely it may seem, the fact is that many cases can be settled at this stage, substituting a certain and acceptable outcome for the risk and expense of further litigation. The Court's Settlement Conference Office has assisted counsel in settling many appeals without unduly delaying the progress of those appeals which do not yield to settlement efforts.    The following information is intended to assist practitioners and their clients in understanding how the Seventh Circuit's settlement conference program works and how they can make the best use of it to achieve favorable results.

- **How do counsel learn that a Rule 33 conference will be conducted in their appeal?**
  A Notice of Rule 33 Settlement Conference is posted on the docket. The Notice is an order of the Court advising counsel of the date and time of the conference, whether it is to be in person or by telephone, and how they and their clients are expected to prepare.

- **How can a Rule 33 conference be requested?**
  Counsel are invited to request a Rule 33 conference by contacting the Settlement Conference Office, U.S. Court of Appeals for the Seventh Circuit, 219 S. Dearborn, Room 1120, Chicago, Illinois 60604-1705 (Tel. (312) 435-6883/Fax (312) 435-6888/E-mail:  settlement@ca7.uscourts.gov ). At the request of any party or parties in an eligible appeal, the Settlement Conference Office will schedule a Rule 33 conference if its calendar permits. Counsel are then advised by notice that a conference will be held.

- **Do other parties have to be informed that a conference was requested?**
  No. If a party prefers to keep its request confidential, the Settlement Conference Office will not disclose to other parties or to the Court that the conference was requested.

- **Is participation in Rule 33 conferences optional?**
  No. When a Rule 33 conference is scheduled, participation is mandatory.

- **Are clients required to attend?**
  Clients and insurance representatives are required to attend Rule 33 conferences whenever the Settlement Conference Office so directs. When clients or insurance representatives have not been directed to attend the initial conference, they must be available by phone – with full settlement authority – for the duration of the conference.

- **Is it mandatory to settle?**
  No. Whether to settle is ultimately for the parties and their counsel to decide. However, counsel and parties are required to participate with the utmost diligence and good faith. Experience shows that settlements can often be achieved when neither side thought it possible.

---

[1] FRAP Rule 33 provides: "Appeal Conferences. The Court may direct the attorneys, and in appropriate cases the parties, to participate in one or more conferences to address any matter that may aid in the disposition of the proceedings, including the simplification of the issues and the possibility of settlement. A conference may be conducted in person or by telephone and be presided over by a judge or other person designated by the court for that purpose. Before a settlement conference, attorneys must consult with their clients and obtain as much authority as feasible to settle the case. As a result of a conference, the court may enter an order controlling the course of the proceedings or implementing any settlement agreement."

- **Who conducts Rule 33 conferences?**
  The Court has delegated the responsibility for conducting Rule 33 conferences to three full-time conference attorneys: Joel N. Shapiro, Rocco J. Spagna, and Jillisa Brittan. All were civil litigators in private practice prior to their appointment by the Court.

- **Is there a fee for the services of the conference attorney?**
  No. The assistance of the Settlement Conference Office is available to appellate litigants at no charge.

- **Must each party's lead attorney attend the Rule 33 conference?**
  Yes. It is essential that each party be represented at the Rule 33 conference by an attorney who not only is conversant with the case but is the attorney on whose advice the party relies. If more than one attorney meets these criteria, either of them may represent the client in the Rule 33 conference.

- **How is it decided whether a Rule 33 conference will be conducted by telephone or in person?**
  When all participants reside in the Chicago metropolitan area, Rule 33 conferences are usually held in the Settlement Conference Office at the United States Courthouse. Otherwise, conferences are generally conducted by telephone. The telephone equipment used in these conferences can accommodate more than a dozen separate lines and enables the conference attorney to speak privately with any combination of participants. Experience indicates that telephone conferences are generally as effective as in-person conferences in fostering settlements.

- **Are in-person conferences ever held outside Chicago?**
  Because the resources of the settlement conference program are limited, in-person conferences cannot routinely be held throughout the Circuit. However, from time to time in-person conferences are conducted at locations other than Chicago. If the participants believe that an in-person conference outside Chicago would be more productive than a conference by telephone, they are welcome to suggest it.

- **Are Rule 33 conferences confidential?**
  Yes. The Court requires all participants to keep what is said in these conferences strictly confidential. Communications, oral and written, which take place in the course of Rule 33 proceedings may not be disclosed to anyone other than the litigants, their counsel, and the conference attorney.

- **Do judges of the Court of Appeals learn what has happened at a Rule 33 conference?**
  No. Participants in Rule 33 conferences, including the conference attorney, are forbidden to impart to any judge or other court personnel, in the Court of Appeals or elsewhere, what has been communicated in these conferences.

- **What occurs at a Rule 33 conference?**
  Rule 33 conferences are official proceedings of the Court but are off-the-record and relatively informal. Discussion is conversational rather than argumentative. The focus is on realistically assessing the prospects of the appeal, the risks and costs of further litigation, the interests of the parties, and the benefits each side can gain through settlement. The conference attorney ordinarily meets with counsel both together and separately. Settlement proposals are discussed. A resolution may or may not be reached during the initial conference. Often, follow-up conferences or shuttle negotiations are conducted. Letters or draft proposals may be exchanged. By the conclusion of the Rule 33 process, the parties will have either reached an agreement to settle or learned how far apart they are and what are the remaining obstacles to settlement.

- **Is discussion of settlement limited to the appeal itself?**
  Not necessarily. If settlement of the appeal will not dispose of the entire case, or if related litigation is pending in other forums, the parties are invited and encouraged to explore the possibility of a global settlement.

- **Is briefing deferred when a Notice of Rule 33 Conference is issued?**
  Briefing is usually postponed until after the initial conference. If further modification of the briefing schedule would be conducive to settlement, an order to that effect may later be entered. What preparation is required of

counsel? In preparation for the initial Rule 33 conference, attorneys are required to consult rigorously with their clients and obtain as much authority as feasible to settle the case. Counsel must also review their legal and factual contentions with a view to being able to discuss candidly the prospects of the appeal and the case as a whole. If the conference attorney requests copies of pleadings, hearing transcripts, or other material in anticipation of the conference, counsel are expected to provide it promptly.

- **What is the role of the conference attorney?**
Because the format of Rule 33 conferences is flexible and each appeal is dealt with on its own terms, the conference attorney plays a variety of roles. He or she acts as moderator, facilitator, and intermediary. The conference attorney serves as a neutral evaluator and a reality check. He or she may suggest terms of settlement. Without being coercive, the conference attorney acts as a determined advocate for settlement.

- **What can counsel expect of the conference attorney**?
Before the initial conference, the conference attorney will have familiarized him or herself with the history of the litigation, the posture of the case, and the issues on appeal. During the conference, the conference attorney will seek additional information about the background of the dispute and the parties' interests, claims and defenses in order to explore all possibilities for a voluntary resolution. The conference attorney is strictly impartial. He or she does not advocate for any party and avoids making comments that could advantage one side or another in arguing the issues on appeal. The conference attorney will disclose any affiliation or prior representation of which he or she is aware that could call his or her neutrality into question. The conference attorney does not force any party to settle or to accept terms it is not willing to accept. While he or she urges parties to take advantage of opportunities to settle favorably, the conference attorney recognizes that settlement is not always possible.

- **How can counsel make best use of the Rule 33 conference to benefit their clients?**
Recognize that the Rule 33 conference is an opportunity to achieve a favorable outcome for your client. Without laying aside the advocate's responsibility, approach the conference as essentially cooperative rather than adversarial. Help your client make settlement decisions based not on overconfidence or wishful thinking, but on a realistic assessment of the case; not on emotion, however justified it may be, but on rational self-interest. Suggest terms of settlement that maximize the benefits of settlement for all parties. Take advantage of the opportunity to talk confidentially and constructively with counsel for the other parties and, if clients are present, to address them respectfully but convincingly. Let the conference attorney know how he or she can help you obtain a satisfactory resolution. Be candid. Don't posture. Listen closely to what other participants have to say. Give the process a chance to work.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., SCRIPPS MEDIA, INC., and TEGNA INC., <br><br> Plaintiffs, <br><br> v. <br><br> TODD ROKITA, in his official capacity as Attorney General of Indiana, RYAN MEARS, in his official capacity as Marion County Prosecutor, and KERRY FORESTAL, in his official capacity as Marion County Sheriff, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br><br><br><br><br><br> No. 1:23-cv-01805-JRS-MG |

**Notice of Appeal**

Pursuant to 28 U.S.C. § 1292(a)(1) and Federal Rule of Appellate Procedure 3, notice is hereby given that Defendants Todd Rokita, Attorney General of Indiana, in his official capacity, Ryan Mears, Marion County Prosecutor, in his official capacity, and Kerry Forestal, Marion County Sheriff, in his official capacity, appeal to the United States Court of Appeals for the Seventh Circuit the District Court's Order Denying Motion to Dismiss and Granting Motion for Preliminary Injunction, dkt. 53, and Preliminary Injunction, dkt. 54.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General
Attorney No. 18857-49

Date: October 25, 2024

By: Thomas S. Pratt
Deputy Attorney General
Attorney No. 36933-18

Adrienne N. Pope
Section Chief
Attorney No. 31911-49

Jefferson Garn
Deputy Attorney General
Attorney No. 29921-49

OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone:  (317)232-0493
Facsimile:  (317)232-7979
E-mail:  Thomas.Pratt@atg.in.gov
*Counsel for Todd Rokita and Ryan Mears*

John P. Lowrey
Deputy Chief Litigation Counsel
Ind. Bar No. 29349-53

OFFICE OF CORPORATION COUNSEL
200 E. Washington Street, Suite 1601
Indianapolis, Indiana 46204
T: (317) 327-4055
F: (317) 327-3968
john.lowrey@indy.gov
*Counsel for Kerry Forestal*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., SCRIPPS MEDIA, INC., and TEGNA INC., | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 1:23-cv-01805-JRS-MG |
| TODD ROKITA, in his official capacity as Attorney General of Indiana, RYAN MEARS, in his official capacity as Marion County Prosecutor, and KERRY FORESTAL, in his official capacity as Marion County Sheriff, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **Docketing Statement of Appellant**

In compliance with Federal Rule of Appellate Procedure 3 and Seventh Circuit Rule 3(c), Defendants Todd Rokita, Attorney General of Indiana, in his official capacity, Ryan Mears, Marion County Prosecutor, in his official capacity, and Kerry Forestal, Marion County Sheriff, in his official capacity, submit this Docketing Statement.

1.     **Statement of District Court Jurisdiction:** Plaintiffs Reporters Committee for Freedom of the Press, Indiana Broadcasters Association, Indiana Professional Chapter of the Society for Professional Journalists, Indianapolis Star, Nexstar Media Inc., Scripps Media, Inc. and Tegna Inc., filed this action for declaratory and injunctive relief, alleging that Indiana Code § 35-44.1-2-14—which provides that "[a] person who knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of

the law enforcement officer's duties after the law enforcement officer has ordered the person to stop approaching commits unlawful encroachment on an investigation, a Class C misdemeanor"—violates the First and Fourteenth Amendments to the U.S. Constitution. Dkt. 1. Although this case involves federal questions under 28 U.S.C. §§ 1331 and 1343, Defendants argued that Plaintiffs lack standing because they have alleged no facts establishing injury. Dkt. 26.

      2.    **Statement of Appellate Jurisdiction:** The Court of Appeals has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) because this is an appeal from an order denying a motion to dismiss and granting a preliminary injunction and from a preliminary injunction. On September 27, 2024, the district court issued an order denying Defendants' motion to dismiss and granting Plaintiffs' motion for a preliminary injunction on Fourteenth Amendment grounds, Dkt. 53, and preliminarily enjoined Defendants from enforcing Ind. Code § 35-44.1-2-14, Dkt. 54. A timely notice of appeal from the order granting the preliminary injunction and preliminary injunction is being filed contemporaneously with this docketing statement on October 25, 2024. This is not a direct appeal from the decision of a magistrate judge. No Rule 59(e) Motion to Alter or Amend Judgment or other motion tolling the time for filing a Notice of Appeal has been filed. The merits of this case remain pending in the district court.

      3.    **Prior or Related Appellate Proceedings:** There are no prior or related appellate proceedings.

      4.    **Current Occupants of Offices Appearing in Their Official Capacities:** The current Attorney General of Indiana is Todd Rokita.  The current Prosecutor of Marion County is Ryan Mears. The current Sheriff of Marion County is Kerry Forestal.

          Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General
Attorney No. 18857-49

Date: October 25, 2024

By: Thomas S. Pratt
Deputy Attorney General
Attorney No. 36933-18

Adrienne N. Pope
Section Chief
Attorney No. 31911-49

Jefferson Garn
Deputy Attorney General
Attorney No. 29921-49

OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone:  (317)232-0493
Facsimile:  (317)232-7979
E-mail:  Thomas.Pratt@atg.in.gov
*Counsel for Todd Rokita and Ryan Mears*

John P. Lowrey
Deputy Chief Litigation Counsel
Ind. Bar No. 29349-53

OFFICE OF CORPORATION COUNSEL
200 E. Washington Street, Suite 1601
Indianapolis, Indiana 46204
T: (317) 327-4055
F: (317) 327-3968
john.lowrey@indy.gov
*Counsel for Kerry Forestal*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| REPORTERS COMMITTEE FOR | ) | |
| FREEDOM OF THE PRESS, INDIANA | ) | |
| BROADCASTERS ASSOCIATION, | ) | |
| INDIANA PROFESSIONAL CHAPTER OF | ) | |
| THE SOCIETY OF PROFESSIONAL | ) | |
| JOURNALISTS, INDIANAPOLIS STAR, | ) | |
| NEXSTAR MEDIA INC., SCRIPPS MEDIA, | ) | |
| INC., and TEGNA INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-1805-JRS-MG |
| | ) | |
| TODD ROKITA, in his official capacity as | ) | |
| Attorney General of Indiana, RYAN | ) | |
| MEARS, in his official capacity as Marion | ) | |
| County Prosecutor, and KERRY | ) | |
| FORESTAL, in his official capacity as | ) | |
| Marion County Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |

**Order on Motion to Dismiss and Motion for Preliminary Injunction**

This is a case regarding the constitutionality of a state statute. An Indiana statute

(the "Buffer Law") makes it a misdemeanor to "knowingly or intentionally approach[]

within twenty-five (25) feet of a law enforcement officer lawfully engaged in the

execution of the law enforcement officer's duties after the law enforcement officer has

ordered the person to stop." Ind. Code § 35-44.1-2-14. Plaintiffs seek to enjoin it on

the grounds that it violates the First and Fourteenth Amendments. Defendants filed

a joint Motion to Dismiss. Defendants' Motion to Dismiss, (ECF No. 25), is **denied**.

Plaintiffs' Motion for Preliminary Injunction, (ECF No. 20), is **granted**.

## I.    Background

The Indiana General Assembly passed the Buffer Law in April 2023, and it went into effect that July.  If a person "knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has ordered the person to stop," that person has committed "unlawful encroachment on an investigation," a misdemeanor.  Ind. Code § 35-44.1-2-14.

Plaintiffs are various associations and corporations involved in news reporting and production.  Reporters Committee for Freedom of the Press ("Reporters Committee") "is a nonprofit association founded by journalists and media lawyers" that works to "provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms."  (Compl. ¶ 16, ECF No. 1.)  The Indiana Broadcasters Association is an association of radio and television broadcasters that employ "reporters who gather news on matters of public concern, including news about law enforcement gathered through the use of photography or audiovisual recording equipment, on a routine daily basis."  (*Id.* ¶ 17.)  The Indiana Professional Chapter of the Society of Professional Journalists ("IndianaProSPJ") is an organization that "works to promote and protect First Amendment freedoms . . . and conducts professional development programs."  (*Id.* ¶ 18.)  Members of IndianaProSPJ "include reporters who gather news on matters of public concern, including news about law enforcement gathered through the use of photography or audiovisual recording equipment, on a routine daily basis."  (*Id.*)

The remaining Plaintiffs are media companies.  The Indianapolis Star "is an Indianapolis-based newspaper that delivers the latest news from the area in print, mobile, and online." (*Id.* ¶ 19.)  Nexstar Media is a "diversified media company" that owns and operates several local news stations in Indianapolis, Terre Haute, Fort Wayne, and Evansville.  (*Id.* ¶ 20.)  Scripps Media and TEGNA own and operate several local television stations, including Indianapolis stations WRTV and WTHR, respectively.  (*Id.* ¶¶ 21–22.)  These four Plaintiffs (together, the "Media Company Plaintiffs") all "employ[] full-time reporters who gather news on matters of public concern, including news about law enforcement gathered through the use of audiovisual recording equipment, on a routine daily basis." (*Id.* ¶¶ 19–22.)

In Count I, Plaintiffs allege that the Buffer Law violates the First Amendment as applied to them because they "intend to engage in peaceful, nonobstructive newsgathering within 25 feet of law enforcement officers performing their duties in public spaces," (Compl. ¶ 65, ECF No. 1), which is protected by the First Amendment but has the potential to be criminalized by the Buffer Law.  They argue that the Buffer Law "advances no legitimate [state] interest" and "is not narrowly tailored." (*Id.* ¶¶ 68–69.)

In Count II, Plaintiffs allege that the Buffer Law violates the First Amendment because it is facially overbroad, contending that it "contains no standards channeling officers' discretion" in whether or not an officer orders someone to step back, and it reaches protected speech that does not pose a threat to law enforcement's execution of their duties.  (Compl. ¶¶ 76–78, ECF No. 1.)

In Count III, Plaintiffs allege that the Buffer Law violates the Fourteenth Amendment because it is void for vagueness. They contend the Buffer Law "provides no warning about the behavior" that may cause police to issue an order to move back and is "so standardless that it authorizes or encourages seriously discriminatory enforcement." (Compl. ¶¶ 82–84, ECF No. 1 (internal citation omitted).)

## II.    Motion to Dismiss

Defendants filed a Joint Motion to Dismiss for Lack of Jurisdiction under Fed. R. Civ. P. 12(b)(1), arguing that Plaintiffs do not have standing and that this case is not ripe for decision. (ECF No. 25.) Neither argument is persuasive.

### A. Legal Standard

A Rule 12(b)(1) motion "tests the jurisdictional sufficiency of the complaint," including whether the plaintiffs have standing. *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). Article III standing has three requirements. A plaintiff must show that they have (1) suffered an injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Where a statute allegedly impacts a plaintiff's First Amendment rights, pre-enforcement challenges are well within Article III's case or controversy requirement and a plaintiff "need not risk arrest before bringing" one. *Schirmer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010) (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010)). "To satisfy the injury-in-fact requirement in a preenforcement action, the plaintiff must show 'an intention to engage in a course of conduct arguably affected

4

with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder.'" *American Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590–91 (7th Cir. 2012) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  A plaintiff "need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (cleaned up).  A plaintiff can also "establish standing based on a *current* injury if they have resorted to self-censorship out of 'an actual and well-founded fear' that the law will be enforced against them." *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)).

## B. Standing

### i. Plaintiffs employing journalists: Indiana Broadcasters Association, IndianaProSPJ, Indianapolis Star, Nexstar Media, Scripps Media, & TEGNA

All Plaintiffs except Reporters Committee either employ journalists themselves or are comprised of members that employ journalists.  These Plaintiffs have adequately alleged an injury in fact to support standing.  Defendants argue that these Plaintiffs lack standing because "[t]hey do not allege that the Buffer Law has actually been enforced against them." (Defs.' Br. 4, ECF No. 26.)  However, this is not necessary for a pre-enforcement challenge where the challenged statute implicates First Amendment rights.  *Schirmer*, 621 F.3d at 586.  Plaintiffs allege that "25 feet is often too far to obtain a clear line of sight" to certain events or "reliably capture audio of those events." (Compl. ¶¶ 39–40, ECF No. 1.)  As a result, the journalists are "put to a choice between committing a crime or forgoing reporting" if they are ordered to

move back.  (*Id.* ¶ 38.)  Reporters have engaged in reporting that "required close contact with members of law enforcement and often relied on videos or photographs captured within 25 feet of officers performing their official duties." (*Id.* ¶ 32.)  They will continue to record law enforcement officers within twenty-five feet in violation of the law, if necessary, (*id.* ¶ 33), but the "burdens and uncertainties [arising from the Buffer Law] chill the exercise of their and their reporters' First Amendment rights to document and report on public officials' activities," (*id.* ¶ 45).

Defendants argue that Plaintiffs' allegations that journalists (1) plan to continue their reporting and (2) are chilled in the exercise of their First Amendment rights are mutually exclusive. (*See* Defs.' Br. 4–5, ECF No. 26.)  However, this does not impact the standing analysis.  A party may plead multiple "statements of a claim . . . alternatively or hypothetically," "even if the pleadings are inconsistent." *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2001) (citing Fed. R. Civ. P. 8(d)(2)). Additionally, it is not necessarily the case that the allegations are inconsistent.  For one, given the number of journalists represented by Plaintiffs, it is possible that some journalists plan to violate the law, while others have scaled back their reporting to avoid arrest or prosecution.  It is not necessarily the case that the same journalist will take the same approach every time, though.  On one occasion, where they cannot see the newsworthy event from further than twenty-five feet, they may intend to violate the statute, and on another occasion, they might stay back at the cost of better coverage.  This intent may change day to day or even minute to minute based on the

individual journalist's reading of evolving situations and assessment of the risk of arrest.

For example, Robert Scheer, a visual journalist at the Indianapolis Star, testified that he is in close proximity with law enforcement officers "approximately every other week," and that this work "often requires [him] to get within 25 feet of law enforcement officers," generally "within—at most—ten feet . . . to capture usable audio."[1]  (Scheer Decl. ¶¶ 5, 9, ECF No. 27-3.)  Scheer testified that before the Buffer Law was enacted, he was covering a shooting at a mall in Castleton.  (*Id.* ¶ 13.)  An officer asked him to stand in a media staging area with other journalists, but Scheer declined because he "understood the officer's request to be voluntary, and . . . knew that [he] was not impeding anything officers were doing."  (*Id.*)  Now, however, he "would be more likely to comply with the officer's request to move to the media staging area in order to avoid the risk of being arrested under" the Buffer Law.  (*Id.* ¶ 14.)  This supports Plaintiffs' allegations both of intent to violate the law and a change in behavior because of it.

Defendants also argue that Plaintiffs have not established that the Buffer Law will be enforced against them or that there is a credible threat of enforcement.  (Defs.' Br. 5–12, ECF No. 26.)  Defendants' argument boils down to the contention that police will enforce the Buffer Law "only when necessary to prevent interference with

---

[1] In reviewing a Rule 12(b)(1) motion to dismiss, the district court is permitted to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (quoting *Capitol Leasing Co. v. Federal Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam)).

necessary law enforcement activity." (*Id.* at 5.) The Court is unpersuaded. The threat of enforcement "is latent in the existence of the statute," *Majors*, 317 F.3d at 721, and Plaintiffs have received no assurances that the law will not be enforced against them, *see Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998) (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)). It is difficult to fathom how such an assurance of "deferential" enforcement can even be made, given the number of law enforcement departments—let alone individual officers—in Indiana. In any event, Plaintiffs have produced evidence that their journalists have been asked to move back by law enforcement officers while gathering news, thus establishing that their fear of enforcement is well-founded. (*See, e.g.*, Thedwall Decl. ¶ 11, ECF No. 27-1; Hums Decl. ¶ 11, ECF No. 27-2.) This is sufficient; Plaintiffs have properly alleged an injury supporting pre-enforcement standing.

### ii. Reporters Committee

Reporters Committee alleges it is "compel[led] . . . to devote resources to combatting the effects of the law that are harmful to the organization[s'] mission[s]." (Compl. ¶ 46, ECF No. 1 (quoting *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) (alteration in original)).) An organization may show an injury in fact sufficient to establish standing if it has experienced a "concrete and demonstrable injury to [its] activities" that has resulted in a "drain on the organization's resources." *Common Cause*, 937 F.3d at 950 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S.

363, 379 (1982)).  The injury must "constitute[] far more than simply a setback to the organization's abstract social interests."  *Id.* (quoting *Havens*, 455 U.S. at 379).

Reporters Committee works to inform journalists of their rights and assist in defending those rights by publishing educational materials, hosting trainings, operating a legal hotline, and providing legal advice and representation.  (Compl. ¶¶ 47–49, 53–54, ECF No. 1.)  Reporters Committee alleges it "has diverted limited resources that it 'would have spent differently or not spent at all.'"  (*Id.* ¶ 55 (quoting *Lawson*, 937 F.3d at 954); *see also* Pls.' Opp. Mot. Dismiss 23, ECF No. 32.) Specifically, it "intends to host additional trainings in Indiana to address the effects" of the Buffer Law, "anticipates an increased need for legal advice and representation," and anticipates increased use of its legal hotline.  (*Id.* ¶¶ 48–49, 53.)

Defendants counter that Reporters Committee's expenditures in response to the Buffer Law are "discretionary" and that Reporters Committee "fail[s] to demonstrate how educational and legal efforts targeting the Buffer Law impaired standard function beyond" its ordinary activities.  (Defs.' Reply 10, ECF No. 33.)  Reporters Committee normally provides educational material and legal support to journalists, Defendants argue, and has not shown "demonstrable deviations from ordinary legal and educational work targeting perceived First Amendment challenges."  (*Id.* at 11.) Additionally, Defendants argue that the anticipated increase in traffic to Reporters Committee's hotline or anticipated increase in demand for legal services are "hypothetical demand spikes" that "constitute possible future injury, insufficient to establish standing."  (*Id.*)

9

Plaintiffs rely primarily on *Lawson* to support their argument for a resource diversion injury. In *Lawson*, organizational plaintiffs challenged an Indiana law allowing the state to remove voters from the voter rolls if a third-party service identified the voter as someone who may also be registered to vote in another state. 937 F.3d at 948. The three plaintiffs, Common Cause Indiana, the Indiana NAACP, and the League of Women Voters of Indiana, "advocate[] for voter access, conduct[] voter education to promote voter access, help[] voters overcome any challenges they face trying to vote, and help[] voters register to vote." *Id.* at 951. Because the statute created an "enhanced risk of erroneous voter removal," the plaintiffs argued, they would "be forced to spend resources cleaning up the mess." *Id.*

The injury recognized by the Seventh Circuit in *Lawson* is strikingly similar to that alleged in this case. For example, Oscar Anderson, Co-President of the League of Women Voters of Indiana, testified that "[a]ny time League members spend addressing the risk of the voter purge by educating voters or re-registering purged voters takes away time and resources that could otherwise be spent registering voters or assisting voters with other purposes." *Id.* at 952 (alteration in original). Common Cause provided "training sessions aimed at educating voters and community activists about the increased risk of erroneous voter registration cancellations" that it would not have held but for the new law. *Id.* Similarly here, Lisa Zycherman, Deputy Legal Director and Policy Counsel at Reporters Committee, testified that "Reporters Committee has already diverted resources to address the burdens imposed by the Act," including by "allocat[ing] time of its attorneys who would otherwise have

10

dedicated their time to providing other legal services to journalists" to challenging the law in court. (Zycherman Decl. ¶ 6, ECF No. 27-5.) Zycherman believes, based on past experience with events that "bring working journalists and law enforcement officers in close proximity," that the use of Reporters Committee's legal hotline will increase due to the Buffer Law. (*Id.* ¶ 8.) Additionally, Reporters Committee "published new resources to educate Indiana journalists about [the Buffer Law] and intends to update its existing resources" and "conduct trainings for journalists and newsrooms in Indiana to inform journalists about the [Buffer Law] and its effect on newsgathering." (*Id.* ¶ 7.)

Defendants argue that this case is more analogous to *Plotkin v. Ryan*, 239 F.3d 882 (7th Cir. 2001). However, this comparison falls short. In *Plotkin*, the Better Government Association ("BGA"), an organization whose mission is to "expose and correct election fraud and corruption" by government officials, alleged that Illinois Governor George Ryan and others were engaging in corruption. *Plotkin v. Ryan*, No. 99 C 53, 1999 WL 965718, at *1 (N.D. Ill. Sept. 29, 1999), *aff'd*, 239 F.3d 882 (7th Cir. 2001). BGA asserted standing in part because it had spent time and money "monitoring and investigating the defendants' conduct, which it [said] impaired its ability to deal with other issues of the public interest." *Id.* at *5. The district court and the Seventh Circuit rejected this argument because one of BGA's primary activities, regardless of government action, was a staffed investigative program. *Id.*; *see also Plotkin*, 239 F.3d at 886. While the "investigation may have diverted certain BGA resources into its investigative program from the other programs, . . . it [was]

not alleged that the defendants' actions [had] themselves impaired BGA's ability to perform its work." *Plotkin*, 1999 WL 965718, at *5.

Here, however, Reporters Committee has alleged that it has altered its programs in response to the Buffer Law. That defending First Amendment rights is the heart of Reporters Committee's advocacy does not preclude it from asserting resource diversion as an injury. *See Lawson*, 937 F.3d at 953–54 (rejecting Indiana's argument that plaintiffs had not established injury or diverted resources because the work performed as a result of the law was still within their missions). Reporters Committee is not asserting standing by attempting to "convert ordinary program costs into an injury in fact," but has clearly demonstrated "new burdens . . . created by the law [it] is challenging." *Id.* at 955 (citation omitted). Reporters Committee has standing to pursue the claims against Indiana.

## C. *Nicodemus* and Collateral Estoppel

Defendants also point to a then-pending case in the Northern District of Indiana, *Nicodemus v. City of South Bend*, arguing that Plaintiffs' case should be dismissed or stayed "on grounds of the first-filed rule and collateral estoppel." (Defs.' Br. Supp. Joint Mot. Dismiss 2, ECF No. 26.) However, neither is appropriate. While the Motion to Dismiss was pending, the Northern District of Indiana ruled in *Nicodemus* that the Buffer Law "has many constitutional applications within its plainly legitimate sweep" and therefore was not facially overbroad. *Nicodemus v. City of South Bend*, No. 3:23-cv-744, 2024 WL 139248, at *8 (N.D. Ind. 2024). This decision is now pending on appeal to the Seventh Circuit. No. 24-1099 (7th Cir. Jan. 23, 2024).

Defendants filed a Motion to Stay this case while *Nicodemus* is pending before the Seventh Circuit.  (ECF No. 41.)  The motion was denied, with Magistrate Judge Mario Garcia finding that facial overbreadth, the sole issue advanced in *Nicodemus*, did not overlap with the additional issues brought here such that it would conserve judicial resources or avoid inequity to stay the case.  (Order 6, ECF No. 46.)  While this Court may agree in the end, and the Seventh Circuit may so find, that the Buffer Law is not facially overbroad, the Court finds that Magistrate Judge Garcia's decision was sound in that other issues are advanced in this case.

For similar reasons, the Court finds unpersuasive Defendants' collateral estoppel arguments.[2]  Collateral estoppel, or issue preclusion, bars successive litigation of an issue where four elements are met: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action."  *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)).

Much of Defendants' argument fails at the first prong: putting aside the fact that Nicodemus does not appear to be a journalist, the issues in this case are not the same as those litigated in *Nicodemus*.  Defendants argue that in both cases, "[t]he single issue is the constitutionality of" the Buffer Law.  (Defs.' Br. 21, ECF No. 26.)

---

[2] The first-filed rule allows district judges discretion to dismiss or stay a case for the purpose of "deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Because a final decision has been reached in *Nicodemus*, the Court will address only Defendants' collateral estoppel arguments.

However, "constitutionality" is an umbrella that contains several issues within it. Although Plaintiffs here and Nicodemus both challenged the Buffer Law as facially overbroad, Nicodemus did not bring a vagueness challenge to the law, *Nicodemus*, 2024 WL 139248, at *3 n.4, nor could he have argued that the Buffer Law is unconstitutional as applied to Plaintiffs in this case, (*see* Pls.' Opp. 8, ECF No. 32).

Additionally, although both suits involve overbreadth challenges, Plaintiffs here were not "fully represented in the prior action." *H-D Mich.*, 496 F.3d at 760. "Parties are in privity when 'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests." *Studio Art Theatre of Evansville, Inc. v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996) (quoting *Tofany v. NBS Imaging Sys., Inc.*, 597 N.E.2d 23, 29 (Ind. Ct. App. 1992), *opinion adopted in part, vacated in part*, 616 N.E.2d 1034 (Ind. 1993)). Although "the rule against nonparty preclusion is subject to exceptions," *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008), the exception Defendants seek does not apply here. Defendants argue that Plaintiffs here are in privity with Nicodemus because their "interests [were] fully represented and protected by" Nicodemus's suit. (Defs.' Br. 23, ECF No. 26.) However, the Supreme Court in *Taylor* held that a party's interest is adequately represented for preclusion purposes "only if (at a minimum)" there are "either special procedures to protect the nonparties' interests or an understanding by the concerned parties that the first suit was brought in a representative capacity." *Taylor*, 553 U.S. at 897. Defendants have not shown that either of these conditions is met. Therefore, Defendants cannot raise collateral estoppel against Plaintiffs in this case.

## D. Ripeness

Plaintiffs' claims are ripe.  Defendants argue that "[f]or the same reasons" Plaintiffs do not have standing, the suit is not ripe.  (Defs.' Br. 13, ECF No. 26.) However, Plaintiffs have established standing for a proper pre-enforcement challenge, so the issues are primarily—if not entirely—legal and fit for judicial decision.  In such cases, "the hardship of postponing judicial review weighs heavily in favor of hearing the case." *Wisconsin Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011).

For these reasons, Defendants' Motion to Dismiss, (ECF No. 25), is **denied**.

## III.    Preliminary Injunction

Now the question is whether Plaintiffs are entitled to a preliminary injunction preventing enforcement of the Buffer Law.  The Court finds that they are.

## A. Legal Standard

To obtain a preliminary injunction, a plaintiff must first show (1) that they have "some" likelihood of success on the merits; (2) that traditional legal remedies are inadequate; and (3) that they will suffer irreparable harm without preliminary relief. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020).  If the plaintiff proves these three elements, "the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one" and consider "any effects on non-parties" to determine whether a preliminary injunction would be in the public interest. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).  Under the Seventh Circuit's "sliding scale" approach, "the more likely

the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

## B. Discussion

The Court finds that Plaintiffs are likely to succeed on their Fourteenth Amendment void for vagueness claim. Therefore, the Court need not address Plaintiffs' First Amendment arguments or consider which level of scrutiny is appropriate for Plaintiffs' challenges to the Buffer Law. *See Greater New Orleans Broad. Ass'n. v. United States*, 527 U.S. 173, 184 (1999) ("It is . . . an established part of our constitutional jurisprudence that we do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground."). The Court also finds that Plaintiffs have established irreparable harm and shown that the balance of harms and public interest weigh in their favor.

### i. Likelihood of success on the merits

To establish a likelihood of success necessary to obtain a preliminary injunction, Plaintiffs must demonstrate that their "claim has some likelihood of success on the merits, not merely a better than negligible chance." *Mays*, 974 F.3d 810, 822 (7th Cir. 2020) (internal quotation marks omitted) (citing *Eli Lilly & Co. v. Arla Foods, Inc.*, 983 F.3d 375, 381 (7th Cir. 2018)).

Plaintiffs argue that the Buffer Law is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment because it contains no limiting standards for police officers to follow or indications of what type of conduct will

16

prompt an officer to order someone to move back.  (Pls.' Br. Supp. Mot. Prelim. Inj. 31, ECF No. 27.)  To withstand a void for vagueness challenge, a statute must define an offense "(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement."  *Bell v. Keating*, 697 F.3d 445, 461 (7th Cir. 2012) (quoting *Skilling v. United States*, 561 U.S. 358, 402–03 (2010)).  Both prongs must be met for the statute to be upheld.  *Id.*  Plaintiffs are likely to succeed in showing that the Buffer Law fails both prongs.

1.  Notice of prohibited conduct

The Buffer Law is clear about what conduct may lead to an arrest: refusing to obey an officer after being told to move when one is within twenty-five feet.  However, the constitutional vagueness analysis requires more when a law criminalizes failing to obey such an order, as due process requires a "warning about the behavior" that will prompt that order.  *Bell v. Keating*, 697 F.3d 445, 462 (7th Cir. 2012).  The Buffer Law includes no such warning.  Instead, it "authorizes officers to order an individual to withdraw for any reason (or no reason)."  (Pls.' Br. 31, ECF No. 27.)

*Bell* dealt with a Chicago ordinance that "criminalize[d] an individual's refusal to leave a scene when so instructed by a police officer when three or more individuals are engaging in disorderly conduct nearby."  697 F.3d at 449.  "Disorderly conduct" was defined as "acts [that] are likely to cause substantial harm or serious inconvenience, annoyance or alarm," all of which could trigger a dispersal order.  *Id.* at 450.  The statute also specified that at least three people must be engaging in the

conduct. *Id.* The Seventh Circuit found that because "substantial harm" "signifies imminent property damage or violence," it is easy for a person to understand when this type of conduct is occurring and could trigger a lawful dispersal order. *Id.* at 461–62. The terms "serious inconvenience" and "alarm," however, did not give sufficient notice because they did not specify what type of behavior qualified as causing "serious inconvenience" or "alarm." *Id.* at 462. The Seventh Circuit held that although "predicating law enforcement's power on at least three people's behavior add[ed] definition and heft," the statute was impermissibly vague insofar as it allowed officers to issue a dispersal order in the face of "serious inconvenience," "alarm," and "annoyance." *Id.* at 463.

The Buffer Law does not include any parameters such as "likely to cause substantial harm" to warn what kind of behavior might cause an officer to issue a stay back order. It does not "make[] clear that conduct which *does* give rise to a lawful dispersal order." *Id.* at 461 (emphasis in original). The only limitation in the Buffer Law is the 25-foot requirement. Simply being within twenty-five feet of a police officer is not a crime, and indeed, important First Amendment rights are regularly exercised within twenty-five feet of law enforcement every single day. (*See* Thedwall Decl. ¶¶ 4–5, ECF No. 27-1; Hums Decl. ¶¶ 5, 8, ECF No. 27-2.) This is not specific enough to allow the general public or "reporters to know how to conduct themselves to avoid receiving an order to move." (Pls.' Br. 31, ECF No. 27.)

2. Arbitrary and discriminatory enforcement

A law "is susceptible to discriminatory or arbitrary enforcement" "if it impermissibly delegates to law enforcement the authority to arrest and prosecute on 'an ad hoc and subjective basis.'" *Bell*, 697 F.3d at 462 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Of course, law enforcement officers retain the authority to "exercise some degree of judgment" in the performance of their duties, but the discretion to carry out "arbitrary and erratic arrests" does not comport with due process. *Id.* (quoting *Wright v. New Jersey*, 469 U.S. 1146, 1151 (1985)).

The Buffer Law lacks standards for officers "to guide [them] in deciding who should be ordered to move and under what circumstances." (Pls.' Br. Supp. Mot. Prelim. Inj. 32, ECF No. 27.) There is nothing in the text of the statute requiring, for example, that the officer must observe the individual engaging in conduct "that would cause a reasonable person to believe that person intends to interfere with the execution of the officer's duties," and in fact, the General Assembly considered and rejected such an amendment. (Pls.' Br. 3–4, ECF No. 27 (internal citation omitted).) Instead, an officer can order reporters and others to move back simply because the officer does not want to be recorded, an unacceptable curtailment of First Amendment rights. *See Alvarez*, 679 F.3d at 597 (quoting *Arizona Free Enterp. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011)) ("[T]here is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs.").

Defendants argue that "the Buffer Law gives adequate guidance to" officers "so as to avoid discriminatory enforcement" because the terms "25 feet," "approaches," and

"stop" are clear.  (Defs.' Opp. 34, ECF No. 34 (internal quotation marks omitted).)

However, this does nothing to define the predicate behavior that would prompt an

order to move back.  All that is clear is that if a person is within twenty-five feet, they

could be on the receiving end of an order to move back, but this fails to identify a

specific behavior that may prompt that order.  Defendants also argue, based on *Ward*

*v. Rock Against Racism*, 491 U.S. 781 (1989), that Plaintiffs must account for the

policies of local law enforcement organizations informing officers of citizens' right to

record.  (Defs.' Br. Supp. Mot. Dismiss 10–11, ECF No. 26; Defs.' Opp. Mot. Prelim.

Inj. 17, ECF No. 34.)  They argue that the existence of these policies "cures concerns

based on theoretical vagueness."  (Defs.' Opp. 34, ECF No. 34.)

In *Ward*, the Supreme Court upheld a New York City ordinance requiring the use

of government personnel to control the volume of concerts in Central Park.  491 U.S.

at 803.  Specifically, Defendants point to the *Ward* Court's finding that although "the

officials implementing [the law] will exercise considerable discretion," *id.* at 794, the

scope of the ordinance was properly limited by the city's stated goals and on-the-

ground implementation, *id.* at 795.  The *Ward* Court wrote that New York City's

"policy" of deferring to concert sponsors and "practice" of "confer[ring] with the

sponsor . . . before taking any corrective action" appropriately limited officials'

discretion.  *Id.* at 795 (quoting *Rock Against Racism v. Ward*, 658 F. Supp. 1346, 1352

(S.D.N.Y. 1987)).  This was based on the district court's finding that Joseph Killian,

the author of the applicable guidelines and Program Director for the relevant area of

Central Park, "attend[ed] most if not all of the Bandshell events[ and made] it a practice to confer with the sponsor." 658 F. Supp at 1352.

There are two key distinctions between the Buffer Law and the challenged ordinance in *Ward* that render the case inapplicable to the vagueness analysis here. First, as Plaintiffs point out, in *Ward*, a city official was interpreting a city ordinance. (Pls.' Reply 5, ECF No. 38.)  Here, however, local officials interpret the statewide Buffer Law, and no locality's policy is binding on another locality's officers, providing no assurance that the law will be enforced uniformly.  Defendants additionally have not pointed to any guidance referencing the Buffer Law itself, but rather have produced police training materials from Marion County and South Bend that speak in general terms about citizens' right to record, the limits on that right, and how officers should respond in the event that recording is interfering with officers' investigations.  (*See* Defs.' Br. Supp. Mot. Dismiss Exs. E, F, ECF Nos. 26-6, 26-7.) This is not enough of a limiting policy for these two jurisdictions, let alone all of Indiana's law enforcement units.

Second, and relatedly, *Ward*'s analysis of enforcement policies was limited to the policy of the *single* individual who was tasked with enforcing the ordinance rather than the *several thousand* law enforcement officers in Indiana who may enforce the Buffer Law.  The presumption that this many officers will "always" enforce the Buffer Law in a deferential way and "adhere to standards absent from [its] face . . . is the very presumption that the doctrine forbidding unbridled discretion disallows." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988).  Unspecific training

materials from two jurisdictions are not the kind of policy interpretations that can save a law from unconstitutional vagueness.

Finally, Defendants argue that the Buffer Law's definition of its own crime provides a limiting principle. Because the crime is called "unlawful encroachment on an investigation," the State argues, this limits police discretion to cases where there is an ongoing investigation and where an individual is encroaching upon it. (Defs.' Opp. 22, 26 n.11, ECF No. 34.) This is circular reasoning: the name of the crime alone does not define its conduct. In any case, "the title of a statute . . . cannot limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 529 (1947).

Plaintiffs have shown that they are likely to succeed on their claim that the Buffer Law is void for vagueness and therefore unconstitutional.

### ii.  *Irreparable harm*

Irreparable harm exists where "legal remedies such as monetary damages are inadequate" to address the harm. *Bedrossian v. Northwestern Mem'l Hosp.*, 409 F.3d 480, 842 (7th Cir. 2005). It is well established that "even short deprivations of First Amendment rights constitute irreparable harm." *Higher Soc'y of Ind. v. Tippecanoe Cnty.*, 858 F.3d 1113, 1116 (7th Cir. 2017); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Plaintiffs have established that reporters have (1) been asked to move several times while reporting within twenty-five feet of law enforcement—even when they

were not interfering with the officers' duties—and (2) changed behavior as a result of the Buffer Law in ways that impedes the exercise of their First Amendment right to gather and publish news.  For example, Robert Scheer testified that instead of taking officers' requests to move to a media staging area as unenforceable suggestions, behaving respectfully while obtaining the best footage, he is more likely to comply with officers' request at the cost of more complete reporting.  (Scheer Decl. ¶¶ 13–14, ECF No. 27-3.)  Scott Hums, the Director of Content at station WTHR, testified that some journalists were asked to move back to a staging area while other people— people who were not clearly journalists—were allowed to remain at a closer distance. (Hums Decl. ¶¶ 11–12.)  Defendants' arguments, to the extent they question Plaintiffs' alleged irreparable harm, focus on whether Plaintiffs have suffered actual harm as it relates to the standing analysis, not whether that harm is irreparable. (*See* Defs.' Br. 9–13, ECF No. 34.)  Plaintiffs have established sufficient harms to show standing—as discussed above—and have cleared the bar for irreparable harm due to the Buffer Law's impact on their First Amendment freedoms.

### iii.  Balance of harms and the public interest

The balance of harms and the public interest weigh in Plaintiffs' favor.  In the Seventh Circuit, once a plaintiff has established a likelihood of success on the merits, the court uses a "sliding scale" to determine the balance of harms, where "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa."  *Mays*, 974 F.3d at 818 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).  Where a state action results in loss of

First Amendment freedoms, "the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *Alvarez*, 679 F.3d at 589–90.

Defendants argue that Indiana would be harmed by an injunction because the Buffer Law advances "no less than ten weighty interests, including public safety, [officer] safety, and privacy rights." (Defs.' Opp. 35, ECF No. 34.) To support this argument, Defendants offer an expert report from Dr. Richard Celeste, a retired law enforcement officer who has served as an expert witness or consultant in several cases regarding police practices, officer safety, and use of force. (*See* Celeste Report 42–70, ECF No. 34-2.) Plaintiffs argue that other Indiana laws address these concerns without infringing on First Amendment rights. (*See* Pls.' Br. 27–28, ECF No. 27.) For example, Indiana already criminalizes "forcibly resist[ing], obstruct[ing], or interfer[ing] with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties." Ind. Code § 35-44.1-3-1(a)(1). State law also prohibits "refus[ing] to leave an emergency incident area," such as a "crime scene" or a "police investigation," "immediately after being requested to do so by . . . a law enforcement officer." Ind. Code §§ 35-44.1-4-1.5, 35-44.1-4-5.

The unique harm that the Buffer Law purports to address, then, is the potential harm that comes from a person being within twenty-five feet of a police officer. Defendants argue that a twenty-five-foot buffer is important because it gives law

enforcement officers enough time to react if a "would-be assailant[]" is running at them. (Defs.' Opp. 30, ECF No. 34.) But it is unclear what harm is done by a person whose behavior is not already criminalized—i.e., a person who is not assaulting anyone, obstructing or interfering with an investigation, or refusing to leave an active crime scene. *See McCullen v. Coakley*, 573 U.S. 464, 492 (2014) (purported state interest and risk of harm "can be readily addressed through existing local ordinances" and "available generic criminal statutes"). Law enforcement officers cannot expect to operate with a twenty-five-foot forcefield around them whenever they choose to enforce the Buffer Law, and certainly not at the expense of established rights.

Indiana's existing criminal statutes mitigate the potential harms that would result from enjoining the enforcement of the Buffer Law. Conversely, without an injunction, Plaintiffs would continue to be harmed by the vagueness of the law, its potential for arbitrary enforcement, and the resulting curtailment of their First Amendment rights. A preliminary injunction is therefore in the public's interest.

## C. Bond

Indiana will not incur any damages from the preliminary injunction. Therefore, the Court waives the security requirement of Rule 65(c) of the Federal Rules of Civil Procedure. *See Habitat Educ. Ctr. v. United States Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (district court can waive bond requirement when there is no danger the opposing party will incur any damages from the injunction).

## IV.    Conclusion

Plaintiffs have standing to bring their claims and their claims are ripe for decision. The Northern District of Indiana's refusal to grant an injunction in *Nicodemus* does not impact this finding of standing.  Defendants' Motion to Dismiss, (ECF No. 25), is **denied**.

Plaintiffs have shown that they are likely to succeed on their claim that the Buffer Law is void for vagueness in violation of the Fourteenth Amendment, established irreparable harm, and satisfied the remaining requirements for a preliminary injunction.  Plaintiffs' Motion for Preliminary Injunction, (ECF No. 20), is **granted**. The injunction will issue by separate order.

**SO ORDERED**.

Date: 09/27/2024

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to all counsel of record via CM/ECF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

REPORTERS COMMITTEE FOR )
FREEDOM OF THE PRESS, INDIANA )
BROADCASTERS ASSOCIATION, )
INDIANA PROFESSIONAL CHAPTER OF )
THE SOCIETY OF PROFESSIONAL )
JOURNALISTS, INDIANAPOLIS STAR, )
NEXSTAR MEDIA INC., SCRIPPS MEDIA, )
INC., and TEGNA INC., )
 )
            Plaintiffs, )
 )
          v. )      No. 1:23-cv-1805-JRS-MG
 )
TODD ROKITA, in his official capacity as )
Attorney General of Indiana, RYAN )
MEARS, in his official capacity as Marion )
County Prosecutor, and KERRY )
FORESTAL, in his official capacity as )
Marion County Sheriff, )
 )
           Defendants. )

## Preliminary Injunction

The Court finds that Reporters Committee for Freedom of the Press, Indiana Broadcasters Association, Indiana Professional Chapter of the Society of Professional Journalists, Indianapolis Star, Nexstar Media Inc., Scripps Media, Inc., and Tegna Inc., (collectively, "Plaintiffs"), are likely to succeed on the merits of their claim that Indiana Code § 35-44.1-2-14 (the "Buffer Law") is unconstitutional. The Buffer Law, effective July 1, 2023, provides: "A person who knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has

1

ordered the person to stop approaching commits unlawful encroachment on an investigation, a Class C misdemeanor." Ind. Code § 35-44.1-2-14.

Specifically, the Court finds that Plaintiffs are likely to prove that the Buffer Law is void for vagueness in violation of the Fourteenth Amendment to the Constitution because it (1) does not define with any specificity the kind of conduct that would prompt an order to move back and (2) contains no standards for law enforcement officers to follow in enforcing the law, leaving it susceptible to arbitrary and discretionary enforcement. The Court also finds that Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief and that there is no adequate remedy at law because Plaintiffs have established that the Buffer Law has resulted in a loss of their First Amendment rights. *See Higher Soc'y of Ind. v. Tippecanoe Cnty.*, 858 F.3d 1113, 1116 (7th Cir. 2017). The Court further finds that the balance of harms weighs in Plaintiffs' favor because Indiana's existing statutes mitigate the harms that may result from this injunction, but Plaintiffs face severe, irreparable damage to their First Amendment rights without an injunction due to the Buffer Law's vagueness and potential for arbitrary enforcement. Finally, the Court finds that a preliminary injunction is in the public interest "because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *American Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012).

Accordingly, the Court **ISSUES A PRELIMINARY INJUNCTION ordering** that the parties; their officers, agents, servants, employees, and attorneys; and any

other persons who act in concert with the parties or their agents, servants, employees, and attorneys, are prohibited from enforcing Indiana Code § 35-44.1-2-14 against any individual, corporation, association, or other entity until this case has been finally resolved. Those enjoined may not issue an order to move back to more than twenty-five feet from law enforcement officers unless such order is consistent with another state or federal law, for example, if there is an operative emergency incident zone. *See* Ind. Code § 35-44.1-4-1.5.

The Court waives the security requirement of Rule 65(c) of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 09/27/2024

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF

# *** PUBLIC DOCKET ***

<span style="color:blue">APPEAL</span>

## U.S. District Court
## Southern District of Indiana (Indianapolis)
## CIVIL DOCKET FOR CASE #: 1:23-cv-01805-JRS-MG

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS et al v. ROKITA et al
Assigned to: Judge James R. Sweeney II
Referred to: Magistrate Judge Mario Garcia
Cause: 28:2201 Constitutionality of State Statute(s)

Date Filed: 10/06/2023
Jury Demand: None
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

**Plaintiff**

**REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**

represented by **Emily Hockett**
Reporters Committee for Freedom of the Press
1156 15th St. NW
Suite 1020
Washington, DC 20005
202-795-9300
Email: ehockett@rcfp.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gabriel Rottman**
Reporters Committee for Freedom of the Press
1156 15th St. NW
Ste 1020
Washington, DC 20005
202-795-9316
Email: grottman@rcfp.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grayson Clary**
Reporters Committee for Freedom of the Press
1156 15th Street NW
Suite 1020
Washington, DC 20005
202-795-9300
Email: gclary@rcfp.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KatieLynn B. Townsend**

REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW
Suite 1020
Washington, DC 20005
202-795-9300
Fax: 202-795-9310
Email: ktownsend@rcfp.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**INDIANA BROADCASTERS
ASSOCIATION**

represented by **Emily Hockett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gabriel Rottman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grayson Clary**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KatieLynn B. Townsend**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**INDIANA PROFESSIONAL CHAPTER
OF THE SOCIETY OF PROFESSIONAL
JOURNALISTS**

represented by **Emily Hockett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gabriel Rottman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grayson Clary**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KatieLynn B. Townsend**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**INDIANAPOLIS STAR**                    represented by **Emily Hockett**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gabriel Rottman**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Grayson Clary**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **KatieLynn B. Townsend**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**NEXSTAR MEDIA INC.**                   represented by **Emily Hockett**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gabriel Rottman**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Grayson Clary**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **KatieLynn B. Townsend**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**SCRIPPS MEDIA, INC.**                  represented by **Emily Hockett**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gabriel Rottman**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Grayson Clary**
                                                        (See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KatieLynn B. Townsend**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**TEGNA INC.**                    represented by **Emily Hockett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gabriel Rottman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grayson Clary**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KatieLynn B. Townsend**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**TODD ROKITA**                    represented by **Adrienne Nicole Pope**
*Attorney General of Indiana*                    INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington St.
Indianapolis, IN 46204-2770
317-233-0878
Fax: 317-232-7979
Email: adrienne.pope@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Jefferson S. Garn**
INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington St.
Indianapolis, IN 46204-2770
(317) 232-6292
Fax: (317) 232-7979
Email: Jefferson.Garn@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Thomas Pratt**
Office of Indiana Attorney General

302 West Washington St.
IGCS - 5th Floor
Indianapolis, IN 46204
317-232-0493
Email: Thomas.Pratt@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**RYAN MEARS**                                    represented by    **Adrienne Nicole Pope**
*Marion County Prosecutor*                                          (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Jefferson S. Garn**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Thomas Pratt**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**KERRY FORESTAL**                                represented by    **John P. Lowrey**
*Marion County Sheriff*                                             City of Indianapolis
                                                                   Office of Corporation Counsel
                                                                   200 E. Washington St.
                                                                   Rm 1601
                                                                   Indianapolis, IN 46204
                                                                   317-327-4055
                                                                   Email: john.lowrey@indy.gov
                                                                   *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/06/2023 | 1 | COMPLAINT against All Defendants, filed by All Plaintiffs. (Filing fee $402, receipt number AINSDC-7844836) (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons) (Townsend, KatieLynn) (Entered: 10/06/2023) |
| 10/06/2023 | 2 | NOTICE of Appearance by KatieLynn B. Townsend on behalf of Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Townsend, KatieLynn) (Entered: 10/06/2023) |
| 10/06/2023 | 3 | Rule 7.1 Disclosure Statement by INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Townsend, KatieLynn) (Entered: 10/06/2023) |
| 10/06/2023 | 4 | MOTION for Attorney(s) Grayson Clary to Appear pro hac vice (Filing fee $100, receipt number AINSDC-7845149), filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., |

| | | TEGNA INC.. (Clary, Grayson) (Entered: 10/06/2023) |
|---|---|---|
| 10/10/2023 | 5 | Summons Issued as to KERRY FORESTAL, RYAN MEARS, and TODD ROKITA. (CW) (Entered: 10/10/2023) |
| 10/10/2023 | 6 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (CW) (Entered: 10/10/2023) |
| 10/10/2023 | 7 | Notice to File Rule 7.1 Disclosure Statement. (RAGS) (CW) (Entered: 10/10/2023) |
| 10/10/2023 | 8 | PRACTICES AND PROCEDURES before Judge James R. Sweeney II. (CW) (Entered: 10/10/2023) |
| 10/10/2023 | 9 | MOTION for Attorney(s) Gabe Rottman to Appear pro hac vice (Filing fee $100, receipt number AINSDC-7848467), filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Rottman, Gabriel) (Entered: 10/10/2023) |
| 10/11/2023 | 10 | ORDER granting 9 Motion to Appear pro hac vice. Attorney Gabriel Rottman for INDIANA BROADCASTERS ASSOCIATION,Gabriel Rottman for INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS,Gabriel Rottman for INDIANAPOLIS STAR,Gabriel Rottman for NEXSTAR MEDIA INC.,Gabriel Rottman for REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,Gabriel Rottman for SCRIPPS MEDIA, INC.,Gabriel Rottman for TEGNA INC. added. Signed by Magistrate Judge Mario Garcia on 10/11/2023. (JRB) (Entered: 10/11/2023) |
| 10/12/2023 | 11 | ORDER granting 4 Motion to Appear pro hac vice. Attorney Grayson Clary for REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS added. See Order. Signed by Magistrate Judge Mario Garcia on 10/12/2023. (LF) (Entered: 10/12/2023) |
| 10/16/2023 | 12 | NOTICE of Appearance by James Bopp, Jr on behalf of Defendants RYAN MEARS, TODD ROKITA. (Bopp, James) (Entered: 10/16/2023) |
| 10/17/2023 | 13 | MOTION for Attorney(s) Emily Hockett to Appear pro hac vice (Filing fee $100, receipt number AINSDC-7858396), filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Hockett, Emily) (Entered: 10/17/2023) |
| 10/18/2023 | 14 | Submission of Signature Requirement re 13 MOTION for Attorney(s) Emily Hockett to Appear pro hac vice (Filing fee $100, receipt number AINSDC-7858396) by All Plaintiffs. (Hockett, Emily) (Entered: 10/18/2023) |
| 10/18/2023 | 15 | ORDER GRANTING 13 MOTION TO APPEAR PRO HAC VICE - This cause has come before the Court upon the motion of Emily Hockett, counsel for Plaintiffs Reporters Committee for Freedom of the Press et al., for leave to appear and participate pro hac vice in the above-captioned cause only. Being fully advised, it is now ORDERED that the motion be, and hereby is, GRANTED. (See Order.) Signed by Magistrate Judge Mario Garcia on 10/18/2023. (JSR) (Entered: 10/18/2023) |
| 10/31/2023 | 16 | NOTICE of Appearance by Taylor Caitlyn Shetina on behalf of Defendants RYAN MEARS, TODD ROKITA. (Shetina, Taylor) (Entered: 10/31/2023) |
| 10/31/2023 | 17 | NOTICE of Parties' First Extension of Time re Filing a response to pleading defined by Fed. R. Civ. P. 7(a), filed by Defendants RYAN MEARS, TODD ROKITA. (Bopp, James) (Entered: 10/31/2023) |

| 11/01/2023 | 18 | NOTICE of Appearance by John P. Lowrey on behalf of Defendant KERRY FORESTAL. (Lowrey, John) (Entered: 11/01/2023) |
|---|---|---|
| 11/01/2023 | 19 | NOTICE of Parties' First Extension of Time re, filed by Defendant KERRY FORESTAL. (Lowrey, John) (Entered: 11/01/2023) |
| 11/03/2023 | 20 | MOTION for Preliminary Injunction , filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Attachments: # 1 Text of Proposed Order Setting Briefing Schedule) (Townsend, KatieLynn) (Entered: 11/03/2023) |
| 11/08/2023 | 21 | SCHEDULING ORDER: Telephonic Status Conference set for 11/21/2023 03:30 PM (Eastern Time) before Magistrate Judge Mario Garcia. The purpose of the conference is to discuss Plaintiff's Motion for Preliminary Injunction at Dkt [ 20 ]. Counsel shall attend the status conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge Mario Garcia on 11/8/2023.(SWM) (Entered: 11/08/2023) |
| 11/22/2023 | 23 | MINUTE ORDER for proceedings held before Magistrate Judge Mario Garcia: Status Conference held on 11/21/2023. Parties appeared by counsel for a Telephonic Status Conference to discuss pending motion for preliminary injunction. Parties indicate no discovery or evidentiary hearing is needed. Parties request opportunity to make oral arguments at a hearing. Parties agree upon a briefing schedule as set forth in Dkt. 20-1. Signed by Magistrate Judge Mario Garcia. (NAD) (Entered: 11/22/2023) |
| 12/01/2023 | 24 | *Defendants' Joint* ANSWER to 1 Complaint , filed by All Defendants.(Bopp, James) (Entered: 12/01/2023) |
| 12/01/2023 | 25 | Joint MOTION to Dismiss for Lack of Jurisdiction , filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Bopp, James) (Entered: 12/01/2023) |
| 12/01/2023 | 26 | BRIEF/MEMORANDUM in Support re 25 Joint MOTION to Dismiss for Lack of Jurisdiction , filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Attachments: # 1 Appendix Exhibit Index, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G)(Bopp, James) (Entered: 12/01/2023) |
| 12/01/2023 | 27 | BRIEF/MEMORANDUM in Support re 20 MOTION for Preliminary Injunction , filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Attachments: # 1 Exhibit Thedwall Declaration, # 2 Exhibit Hums Declaration, # 3 Exhibit Scheer Declaration, # 4 Exhibit Smith Declaration, # 5 Exhibit Zycherman Declaration)(Townsend, KatieLynn) (Entered: 12/01/2023) |
| 12/12/2023 | 28 | Joint MOTION for Extension of Time to File Response to January 5, 2024 re 20 MOTION for Preliminary Injunction , filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Bopp, James) (Entered: 12/12/2023) |
| 12/13/2023 | 29 | Submission of Proposed Order , re 28 Joint MOTION for Extension of Time to File Response to January 5, 2024 re 20 MOTION for Preliminary Injunction , filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Bopp, James) (Entered: 12/13/2023) |

| 12/13/2023 | 30 | ORDER granting 28 Joint MOTION for Extension of Time. The deadline for Defendants' response in opposition to 20 Plaintiffs' Motion for Preliminary Injunction is extended 21 days, making Defendants' response in opposition to the Motion for Preliminary Injunction due January 5, 2024. Signed by Magistrate Judge Mario Garcia on 12/13/2023. (LBT) (Entered: 12/14/2023) |
|---|---|---|
| 12/15/2023 | 31 | ORDER - The Court granted Defendants' Motion for Extension of Time for Response in Opposition to Plaintiff's Motion for Preliminary Injunction to January 5, 2024 [Filing No. [ 30 ]]. The Court sua sponte moves Plaintiffs' reply deadline to January 19, 2024. Signed by Magistrate Judge Mario Garcia on 12/15/2023.(SWM) (Entered: 12/15/2023) |
| 12/15/2023 | 32 | RESPONSE in Opposition re 25 Joint MOTION to Dismiss for Lack of Jurisdiction , filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Townsend, KatieLynn) (Entered: 12/15/2023) |
| 12/22/2023 | 33 | REPLY in Support of Motion re 25 Joint MOTION to Dismiss for Lack of Jurisdiction , filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Attachments: # 1 Exhibit H)(Bopp, James) (Entered: 12/22/2023) |
| 01/05/2024 | 34 | RESPONSE in Opposition re 20 MOTION for Preliminary Injunction , filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Attachments: # 1 Affidavit of Captain Lewis Perrine, # 2 Affidavit Declaration of Dr. Celeste)(Bopp, James) (Entered: 01/05/2024) |
| 01/12/2024 | 35 | Unopposed MOTION for Leave to File Excess Pages , filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Attachments: # 1 Text of Proposed Order)(Townsend, KatieLynn) (Entered: 01/12/2024) |
| 01/16/2024 | 36 | ORDER granting 35 Motion for Leave to File Excess Pages. The page limit for Plaintiffs' Reply is hereby enlarged to and including 25 pages, not including the elements excluded from the page count by L.R. 7-1(e)(1). Signed by Judge James R. Sweeney II on 1/16/2024. (LBT) (Entered: 01/16/2024) |
| 01/18/2024 | 37 | Joint MOTION for Leave to File *Notice of Supplemental Authority*, filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Attachments: # 1 Exhibit Notice of Supplemental Authority)(Bopp, James) (Entered: 01/18/2024) |
| 01/19/2024 | 38 | REPLY in Support of Motion re 20 MOTION for Preliminary Injunction , filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Townsend, KatieLynn) (Entered: 01/19/2024) |
| 01/19/2024 | 39 | Unopposed MOTION *to Consolidate Preliminary Injunction Hearing with Trial on the Merits*, filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Attachments: # 1 Text of Proposed Order)(Townsend, KatieLynn) (Entered: 01/19/2024) |

| 02/06/2024 | 40 | Order on Motion to Consolidate Preliminary Injunction Hearing with Trial on the Merits (ECF No. 39) - The Court finds here that a hearing on the pending Motion for Preliminary Injunction, (ECF No. 20 ), is unnecessary at this time. If the Court requires further briefing or a hearing, then the Parties will be notified. For now, the Court will decide the Motion for Preliminary Injunction on the papers, and any trial, if necessary, will take place, separately, later. The Motion to Consolidate Preliminary Injunction Hearing with Trial on the Merits, (ECF No. 39 ), is denied. (See Order.) Signed by Judge James R. Sweeney II on 2/6/2024. (JSR) (Entered: 02/06/2024) |
| --- | --- | --- |
| 02/21/2024 | 41 | Joint MOTION to Stay , filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Bopp, James) (Entered: 02/21/2024) |
| 02/22/2024 | 42 | Submission of Proposed Order , re 41 Joint MOTION to Stay , filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Bopp, James) (Entered: 02/22/2024) |
| 02/23/2024 | 43 | RESPONSE in Opposition re 41 Joint MOTION to Stay , filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Townsend, KatieLynn) (Entered: 02/23/2024) |
| 03/01/2024 | 44 | REPLY in Support of Motion re 41 Joint MOTION to Stay , filed by Defendants KERRY FORESTAL, RYAN MEARS, TODD ROKITA. (Bopp, James) (Entered: 03/01/2024) |
| 03/01/2024 | 45 | MARGINAL ENTRY - Defendant's Notice of Supplemental Authority, Dkt. 37 , is granted to the extent the Court acknowledges the submission of supplemental authority Signed by Magistrate Judge Mario Garcia on 3/1/2024. (BAA) (Entered: 03/05/2024) |
| 03/08/2024 | 46 | ORDER - Pending before the Court is Defendants' Joint Motion to Stay. [Filing No. 41 .] The Court DENIES Defendants' Motion. (See Order.) Signed by Magistrate Judge Mario Garcia on 3/8/2024. (JSR) (Entered: 03/08/2024) |
| 07/10/2024 | 47 | NOTICE of Appearance by Thomas Pratt on behalf of Defendants RYAN MEARS, TODD ROKITA. (Pratt, Thomas) (Entered: 07/10/2024) |
| 07/10/2024 | 48 | NOTICE of Appearance by Adrienne Nicole Pope on behalf of Defendants RYAN MEARS, TODD ROKITA. (Pope, Adrienne) (Entered: 07/10/2024) |
| 07/12/2024 | 49 | MOTION to Withdraw Attorney Appearance *James Bopp, Jr.*, filed by Defendants RYAN MEARS, TODD ROKITA. (Attachments: # 1 Text of Proposed Order Proposed Order) (Bopp, James) (Entered: 07/12/2024) |
| 07/15/2024 | 50 | MOTION to Withdraw Attorney Appearance *Taylor C. Shetina*, filed by Defendants RYAN MEARS, TODD ROKITA. (Attachments: # 1 Text of Proposed Order Proposed Order) (Shetina, Taylor) (Entered: 07/15/2024) |
| 07/15/2024 | 51 | ORDER Granting Attorney James Bopp, Jr.'s Withdrawal - Upon good cause and in accordance with Local Rule 83-7, this Court GRANTS Attorney James Bopp Jr.'s Motion to Withdraw as counsel for Todd Rokita and Ryan Mears 49 in this matter. Signed by Magistrate Judge Mario Garcia on 7/15/2024. (BAA) (Entered: 07/15/2024) |
| 07/15/2024 | 52 | ORDER Granting Attorney Taylor Shetina's Withdrawal - Upon good cause and in accordance with Local Rule 83-7, this Court GRANTS Attorney Taylor Shetina's Motion to Withdraw as counsel for Todd Rokita and Ryan Mears 50 in this matter. Signed by Magistrate Judge Mario Garcia on 7/15/2024. (BAA) (Entered: 07/15/2024) |
| 09/27/2024 | 53 | ORDER on Motion to Dismiss and Motion for Preliminary Injunction - Plaintiffs have standing to bring their claims and their claims are ripe for decision. The Northern District of Indiana's refusal to grant an injunction in Nicodemus does not impact this finding of |

| | | |
|---|---|---|
| | | standing. Defendants' Motion to Dismiss, (ECF No. 25 ), is **denied**. Plaintiffs have shown that they are likely to succeed on their claim that the Buffer Law is void for vagueness in violation of the Fourteenth Amendment, established irreparable harm, and satisfied the remaining requirements for a preliminary injunction. Plaintiffs' Motion for Preliminary Injunction, (ECF No. 20 ), is **granted**. The injunction will issue by separate order (SEE ORDER FOR DETAILS). Signed by Judge James R. Sweeney II on 9/27/2024. (DWH) (Entered: 09/27/2024) |
| 09/27/2024 | 54 | PRELIMINARY INJUNCTION - Accordingly, the Court ISSUES A PRELIMINARY INJUNCTION ordering that the parties; their officers, agents, servants, employees, and attorneys; and any other persons who act in concert with the parties or their agents, servants, employees, and attorneys, are prohibited from enforcing Indiana Code § 35-44.1-2-14 against any individual, corporation, association, or other entity until this case has been finally resolved. Those enjoined may not issue an order to move back to more than twenty-five feet from law enforcement officers unless such order is consistent with another state or federal law, for example, if there is an operative emergency incident zone. See Ind. Code § 35-44.1-4-1.5. The Court waives the security requirement of Rule 65(c) of the Federal Rules of Civil Procedure (SEE PRELIMINARY INJUNCTION). Signed by Judge James R. Sweeney II on 9/27/2024. (DWH) (Entered: 09/27/2024) |
| 09/30/2024 | 55 | ORDER SETTING INITIAL PRE-TRIAL CONFERENCE - The above case is hereby assigned for an INITIAL PRETRIAL CONFERENCE on FRIDAY, 11/1/2024 at 3:00 PM in Telephonic before Magistrate Judge Mario Garcia. The information needed to participate in this telephonic conference will be provided by a separate notification. SEE ORDER. Signed by Magistrate Judge Mario Garcia on 9/30/2024.(KAA) (Entered: 09/30/2024) |
| 10/10/2024 | 56 | MOTION for Permanent Injunction , filed by Plaintiffs INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, SCRIPPS MEDIA, INC., TEGNA INC.. (Attachments: # 1 Text of Proposed Order)(Townsend, KatieLynn) (Entered: 10/10/2024) |
| 10/21/2024 | 57 | NOTICE of Appearance by Jefferson S. Garn on behalf of Defendants TODD ROKITA, RYAN MEARS. (Garn, Jefferson) (Entered: 10/21/2024) |
| 10/22/2024 | 58 | SCHEDULING ORDER - The Telephonic Initial Pretrial Conference is RESET for 11/1/2024 at 2:00 PM (Eastern Time) before Magistrate Judge Mario Garcia. Please note this is a change to the start time only and the conference will now start at 2:00 p.m. (Eastern). Counsel shall attend the conference by calling the designated phone number, to be provided by the Court via email generated by the Court's ECF system. (See Order.) Signed by Magistrate Judge Mario Garcia on 10/22/24. (JSR) (Entered: 10/23/2024) |
| 10/24/2024 | 59 | RESPONSE in Opposition re 56 MOTION for Permanent Injunction *[Defendants' Joint Response In Opposition]*, filed by Defendants TODD ROKITA, RYAN MEARS. (Pratt, Thomas) (Entered: 10/24/2024) |
| 10/25/2024 | 60 | NOTICE OF APPEAL as to 54 Preliminary Injunction, 53 Order on Motion for Preliminary InjunctionOrder on Motion to Dismiss/Lack of Jurisdiction, filed by Defendants TODD ROKITA, RYAN MEARS. (Filing fee $605, receipt number AINSDC-8398459) (Pratt, Thomas) (Entered: 10/25/2024) |
| 10/25/2024 | 61 | DOCKETING STATEMENT by TODD ROKITA, RYAN MEARS re 60 Notice of Appeal (Pratt, Thomas) (Entered: 10/25/2024) |

**Case #: 1:23-cv-01805-JRS-MG**