CERTIFIED COPY

A True Copy
Teste:

*Nathaniel Wadic*

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-2927

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, *et al.*,

*Plaintiffs-Appellees,*

*v.*

TODD ROKITA, Attorney General of Indiana, *et al.*,

*Defendants-Appellants.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 23-cv-1805 — **James R. Sweeney II**, *Chief Judge.*

———————————

ARGUED MAY 13, 2025 — DECIDED AUGUST 5, 2025

———————————

Before EASTERBROOK, BRENNAN, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* Indiana's "buffer law" makes it a crime for a person to knowingly or intentionally approach within 25 feet of a law enforcement officer who is "lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has ordered the person to stop approaching." Indiana Code (I.C.) § 35-44.1-2-14.

The plaintiffs, who are various media and media-related organizations, argue that the buffer law is unconstitutionally vague under the Fourteenth Amendment's Due Process Clause because it is susceptible to arbitrary or discriminatory enforcement by the police. The district court concluded that the plaintiffs were likely to succeed in their Fourteenth Amendment challenge to the buffer law, so the court issued a preliminary injunction blocking its enforcement. For the reasons below, we affirm the district court's decision to preliminarily enjoin enforcement of the buffer law.

## I.    BACKGROUND

### A.  Indiana's Buffer Law

Indiana's "Unlawful Encroachment on an Investigation" law, referenced here as the buffer law, took effect on July 1, 2023. It provides:

> A person who knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has ordered the person to stop approaching commits unlawful encroachment on an investigation, a Class C misdemeanor.

I.C. § 35-44.1-2-14.

As we recently explained in *Nicodemus v. City of South Bend*, 137 F.4th 654 (7th Cir. 2025), the buffer law operates quite straightforwardly. An officer may only invoke the buffer law against someone who is "approaching," and only someone who nevertheless "knowingly or intentionally approaches" within 25 feet of the officer after being ordered to

No. 24-2927                                                                      3

stop approaching violates the buffer law. *Id.* at 661–62. Nothing in the buffer law allows an officer to order someone to move back. *Id.*

### B. District Court Proceedings

On October 6, 2023, several plaintiffs challenged Indiana's buffer law as facially void for vagueness under the Fourteenth Amendment, facially overbroad under the First Amendment, and failing First Amendment scrutiny as applied to them. The plaintiffs are: The Reporters Committee for Freedom of the Press, a non-profit organization dedicated to First Amendment advocacy on behalf of journalists; the Indiana Broadcasters Association, comprised of more than 250 member radio and television broadcasters; the Indiana Professional Chapter of the Society of Professional Journalists, whose members include full-time Indiana-based reporters; the *Indianapolis Star* newspaper; and Nexstar Media Inc., Scripps Media Inc., and TEGNA Inc., each of which operates local TV news stations and employs full-time reporters. In their complaint, the plaintiffs sought a declaration of the buffer law's unconstitutionality and an injunction restraining the defendants—the Indiana Attorney General, Marion County Prosecutor, and Marion County Sheriff, in their official capacities—from enforcing the buffer law.[1]

On November 3, 2023, the plaintiffs moved for a preliminary injunction, reasserting their constitutional claims and arguing that failure to enjoin enforcement of the buffer law would cause them irreparable harm. On December 1, the State

---

[1] For convenience, we refer to the defendants collectively as "the State."

moved to dismiss the lawsuit for lack of jurisdiction, arguing that the plaintiffs lacked standing. FED. R. CIV. P. 12(b)(1).

In a September 27, 2024, order, the district court ruled on both motions. The district court denied the State's motion to dismiss, concluding that it had jurisdiction because the plaintiffs had properly alleged an injury in fact to support their pre-enforcement challenge. Next, the district court granted the plaintiffs' preliminary injunction motion, reasoning that the plaintiffs were likely to succeed on the merits of their Fourteenth Amendment void-for-vagueness claim, that they would suffer irreparable harm to their newsgathering activities absent an injunction, and that the balance of harms and public interest weighed in the plaintiffs' favor. *Reporters Comm. for Freedom of the Press v. Rokita*, 751 F. Supp. 3d 931, 944–948 (S.D. Ind. 2024); *see Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (explaining considerations underlying a preliminary injunction). The district court did not reach the plaintiffs' First Amendment claims. *Reporters Comm.*, 751 F. Supp. 3d. at 943.

The State appeals the district court's order granting preliminary injunctive relief, arguing that the buffer law is not unconstitutionally vague and renewing its objection to the plaintiffs' standing to sue. Such interlocutory appeals are authorized under 28 U.S.C. § 1292(a)(1). *Bevis v. City of Naperville*, 85 F.4th 1175, 1187 (7th Cir. 2023). The district court has stayed further proceedings pending resolution of this appeal.

### C. Indiana's Second Buffer Law

While this appeal was pending, the Indiana legislature passed a second buffer law, which is identical to the buffer law at issue in this case except it specifies that a law

enforcement officer may only order an individual to stop approaching if he "reasonably believes that a person's presence" within 25 feet "will interfere with the performance" of his "duties." This second buffer law was signed by Governor Braun on March 5, 2025, and took effect on July 1, 2025. It is codified adjacent to the original buffer law, at I.C. § 35-44.1-2-15.

## II.    DISCUSSION

We begin by assuring ourselves of our jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). We then assess the district court's decision to enter a preliminary injunction in the plaintiffs' favor.

### A. Jurisdiction

We have interlocutory appellate jurisdiction under 28 U.S.C. § 1292(a)(1). But the threshold questions of standing and mootness, which both implicate our subject-matter jurisdiction under Article III of the Constitution, merit further discussion. *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 813–14 (7th Cir. 2018). We may address standing and mootness "in any order we choose." *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023). We start with mootness.

#### 1. Mootness

"It is fundamental to the exercise of judicial power under Article III of the United States Constitution that 'federal courts may not give opinions upon moot questions or abstract propositions.'" *Zessar v. Keith*, 536 F.3d 788, 793 (7th Cir. 2008) (quoting *Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 729 (7th Cir. 2006)). This rule "subsists through all stages of federal proceedings, trial and appellate." *Id.* at 794 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). Thus, "if

an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). One such event could be the repeal or replacement of a challenged statute. A challenge to the constitutionality of a statute "becomes moot if a new statute is enacted in its place during the pendency of the litigation, and the plaintiff seeks only prospective relief." *Zessar*, 536 F.3d at 793; *Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995).

As mentioned earlier, I.C. § 35-44.1-2-15—Indiana's second buffer law—was passed during the pendency of this appeal. It is narrower than the original buffer law because it requires an officer to have a reasonable belief that someone approaching him will interfere with his duties before he may order the person to stop approaching. The original buffer law contains no reasonable belief requirement. *See* I.C. § 35-44.1-2-14. Since the plaintiffs here seek only prospective relief, we must assure ourselves that the second, narrower buffer law has not repealed or replaced the original, broader version, thereby rendering this appeal moot. *See Zessar*, 536 F.3d at 793.

First, I.C. § 35-44.1-2-15 does not purport to repeal or replace any other part of the Indiana Code. Instead, House Bill 1122, which introduced the second buffer law, specified that it would be "added to the Indiana Code as a new section." H.B. 1122, 124th Gen. Assemb. (Ind. 2025). Second, in a supplemental letter to this appeal, the State clarified that the intent behind the second buffer law is to provide "*additional*

authority for officers to order someone to stop approaching."[2] At oral argument, which took place before the second buffer law went into effect, the State explained that officers would have discretion to rely on either buffer law when seeking to stop someone from approaching. Because the State intends to continue enforcing the first buffer law, the enactment of the second buffer law did not moot this appeal.

### 2. Standing

Next, we turn to standing, a "bedrock constitutional requirement" rooted in Article III of the Constitution. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). Standing at its core is about whether a plaintiff has a "personal stake" in the dispute. *Id.* at 379. To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Id.* at 380. The last two requirements—causation and redressability—often go together: after all, if a defendant's action causes an injury, then enjoining that action "will typically redress that injury." *Id.* at 380–81.

Recall that the plaintiffs here brought a pre-enforcement challenge to the buffer law, arguing in relevant part that the buffer law is unconstitutionally vague and overbroad. Arguing these theories together is "not unusual." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 479 (7th Cir. 2012). A statute that is too vague may raise the "same chilling concerns that

---

[2] App. Dkt. 39 at 1 (emphasis added).

attend an overbreadth challenge." *Bell v. Keating*, 697 F.3d 445, 455 (7th Cir. 2012) (citing *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620 (1976)). So, a plaintiff challenging a statute as overbroad under the First Amendment "may also facially challenge [it] as void for vagueness" under the Fourteenth Amendment's Due Process Clause. *Id.* (citing *Penny Saver Publ'ns, Inc. v. Vill. of Hazel Crest*, 905 F.2d 150, 154 n. 2 (7th Cir. 1990)). We focus on vagueness because that is the issue at the center of this appeal.

Relating as it does to due process, the vagueness doctrine "incorporates notions of fair notice or warning." *Smith v. Goguen*, 415 U.S. 566, 572 (1974). It is unjust to punish a person without providing clear notice as to what conduct is prohibited. *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983). A statute that is "so standardless that it authorizes or encourages seriously discriminatory enforcement" similarly leads to concerns about fairness. *United States v. Williams*, 553 U.S. 285, 304 (2008). Thus, a vagueness claim alleges that a statute "either fails to provide definite notice to individuals regarding what behavior is criminalized," invites arbitrary or discriminatory enforcement, or both. *Bell*, 697 F.3d at 455 (citing *Skilling v. United States*, 561 U.S. 358, 402–03 (2010)).

The State does not contest that the plaintiffs have established an injury in fact for standing purposes, and we see no reason to second-guess the district court's thorough injury analysis. As the district court explained, the plaintiffs submitted affidavits from their journalist members or employees explaining that they conduct newsgathering activities in proximity to police officers every day, and that at least some journalists intend to continue doing so, even if it means flouting the buffer law. Other journalists claim to have engaged in self-

No. 24-2927                                                                 9

censorship by changing how they behave when conducting newsgathering activities near Indiana police officers out of fear that the buffer law will be invoked against them. Given the buffer law's chilling effect on some journalists' speech, and other journalists' intentions to continuing recording police activity, we agree with the district court that the plaintiffs have demonstrated injury in fact. *Bell*, 697 F.3d at 455; *see also Kilborn v. Amiridis*, 131 F.4th 550, 565–66 (7th Cir. 2025).

The State argues, however, that the plaintiffs fail to satisfy the causation and redressability requirements of standing, which are often "flip sides of the same coin." *Sprint Comms. Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008). The State maintains that any injury suffered by the plaintiffs is not redressable by enjoining enforcement of the buffer law because law enforcement officers could simply fall back on Indiana's emergency incident statute, which also allows them to ask people to stay at least 25 feet away. We described the emergency incident statute in *Nicodemus*:

> [The statute] makes it a Class A misdemeanor to knowingly or intentionally refuse to leave an emergency incident area when requested to do so by a law enforcement officer. Emergency incidents include crimes scenes, police investigations, and locations where an individual is being arrested. I.C. § 35-44.1-4-1.5. An "emergency incident area" means an area defined by public safety officers either orally or with certain physical markers; or that is 25 feet "in all directions from the perimeter of the emergency incident." I.C. § 35-44.1-4-2.

137 F.4th at 669.

The State's argument fails twice over. First, although there may be some overlap between the buffer law and the emergency incident statute, the overlap is not complete. *See id.* (explaining that "the buffer law aims to fill gaps left by the existing statutory scheme"). As the plaintiffs point out, they conduct newsgathering activities in proximity to the police at a variety of public events—such as public assemblies, rallies, and press conferences—that do not qualify as "emergency incidents." Moreover, an "emergency incident" is defined by a set perimeter; by contrast, the buffer law, by its own terms, operates whenever and wherever a law enforcement officer is "lawfully engaged in the execution" of his duties. I.C. § 35-44.1-2-14. The buffer law applies in a far broader set of situations, as explained below.

Second, even if there were complete overlap, the plaintiffs' injuries would be redressed by enjoining enforcement of the buffer law. The buffer law and emergency incident statute are both criminal laws—when they both apply, one could be charged and convicted under both, thus resulting in steeper penalties for the same conduct. In an analogous situation, our colleagues in the Eighth Circuit concluded that removing an additional layer of criminal liability was a form of redress sufficient to confer standing, even though the underlying behavior was still subject to prosecution. *See Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1078 (8th Cir. 2024) (reasoning that enjoining Iowa's "trespass-surveillance" law would provide relief to animal-welfare groups seeking to surreptitiously record industrial agricultural operations even if they could still be prosecuted for general trespass); *accord Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement.") (quoting *Church of Scientology*, 506 U.S. at 13);

No. 24-2927                                                    11

*Massachusetts v. EPA*, 549 U.S. 497, 526 (2007) (finding standing when the risk of injury "would be reduced to some extent" by the requested relief, even if not completely). We reach the same result. The plaintiffs satisfy the causation and redressability requirements and therefore have standing to challenge the buffer law.[3]

Assured of our jurisdiction, we proceed to reviewing the preliminary injunction underlying this appeal.

## B. The Fourteenth Amendment

A district court may grant a preliminary injunction if a plaintiff shows "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (enumeration added). When evaluating a grant of a preliminary injunction, we "review the district court's findings of fact for clear error, its legal conclusions de novo, and its balancing of the factors for a preliminary

---

[3] The Reporters Committee's argument for standing rests largely on the resources it has expended to raise awareness about the buffer law. *See Common Cause Ind. v. Lawson*, 937 F.3d 944, 950–53 (7th Cir. 2019) (relying on *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). This is arguably in tension with the Supreme Court's recent decision in *Alliance for Hippocratic Medicine*. *See* 602 U.S. at 394. (The Court declared that "an organization that that has not suffered a concrete injury caused by a defendant's action" cannot "manufacture" standing "simply by expending money to gather information and advocate against the defendant's action.") However, because at least one other plaintiff has standing for each claim, we need not resolve whether the Reporters Committee has standing, too. *Chicago Joe's*, 894 F.3d at 813; *Vill. of Arlington Heights v. Metro. House. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977).

12                                            No. 24-2927

injunction for abuse of discretion." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022) (quoting *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016)).

The district court preliminarily enjoined the buffer law after concluding that the plaintiffs were likely to succeed on their claim that the buffer law is unconstitutionally vague under the Fourteenth Amendment. The State challenges only the district court's likelihood-of-success determination, thereby conceding any argument about irreparable harm, the balance of equities, or the public interest. We limit our discussion accordingly, observing that when a plaintiff establishes a likelihood of success on the merits of a constitutional challenge to a statute implicating First Amendment freedoms, the other preliminary injunction factors are easily met. *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 589–90 (7th Cir. 2012); *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004).

To satisfy the Fourteenth Amendment's Due Process Clause, a criminal statute like the buffer law must "define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling*, 561 U.S. at 402–03 (quoting *Kolender*, 461 U.S. at 357); *Bell*, 697 F.3d at 461. Failure to satisfy either criterion results in a statute that is void for vagueness.

The State argues that the buffer law meets the "definiteness" requirement because it is "clear about what conduct will lead to an arrest: refusing to obey an officer after being told to move when one is within twenty-five feet."[4] The State

---

[4] App. Dkt. 18 at 24 (quoting (Dkt. 53, Dist. Ct. Op. at 17)).

points out that 25 feet is an objectively measurable distance, and that ordinary people are unlikely to be confused about whether they are approaching an on-duty police officer after being told to stop approaching. Moreover, the State observes that if someone "is not sure about where a 25-foot marker is, he cannot be arrested" under the buffer law because it only criminalizes those who "knowingly or intentionally" approach within 25 feet following a warning.[5]

We will accept the State's premise that the buffer law is sufficiently definite without so deciding, and we will not analyze definiteness further. *See Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) (explaining with respect to definiteness requirement that "scienter requirements alleviate vagueness concerns"). We instead assess whether the buffer law encourages arbitrary or discriminatory enforcement.[6] *Kolender*, 461 U.S. at 357.

---

[5] Id. at 25–26.

[6] The challenger in *Nicodemus* advanced a flavor of this argument, relying on a line of cases holding licensing and permitting statutes unconstitutional for vesting "unbridled discretion" in decisionmakers. We declined to extend those cases beyond their specialized context. *See Nicodemus*, 137 F.4th at 666–67. We also did not address vagueness in *Nicodemus* because the challenger explicitly disavowed reliance on a vagueness theory. *Id.* at 667 n.9. Instead, the challenger advanced a facial challenge to the buffer law premised on its impact on the First Amendment right to record the police. *Id.* at 665–71; *see Alvarez*, 679 F.3d at 594–603 (explaining the right to record). We found that the original buffer law was a content-neutral statute that, on its face, was "a reasonable 'time, place, or manner' restriction within the bounds of the First Amendment." *Nicodemus*, 137 F.4th at 670 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

14                                    No. 24-2927

A statute encourages arbitrary or discriminatory enforcement "if it impermissibly delegates to law enforcement the authority to arrest and prosecute on 'an ad hoc and subjective basis,'" giving police unfettered discretion to make "arbitrary and erratic arrests." *Bell*, 697 F.3d at 462 (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972), then quoting *Wright v. New Jersey*, 469 U.S. 1146, 1151 (1985)). Put another way, a statute may be void for vagueness if it "necessarily entrust[s] lawmaking to the moment-to-moment judgment of the policeman on his beat." *Kolender,* 461 U.S. at 360 (modification in original) (internal quotation marks omitted). Such a concern commonly arises in cases involving statutes with ambiguous wording susceptible to broad interpretation by an enforcing officer. In *Bell*, for example, we reasoned that a section of Chicago's dispersal ordinance empowering police to order dispersal based on "serious inconvenience" gave law enforcement "too much discretion in determining when addressing a nuisance permits quieting protected expression and when it does not." *Bell*, 697 F.3d at 463. The ordinance also permitted dispersal based on "annoyance," which again rendered individuals "vulnerable to arbitrary or discriminatory arrest" and therefore "fail[ed] to fulfill due process' second command." *Id.*

Similarly, in *City of Chicago v. Morales*, the Supreme Court considered an ordinance empowering officers to arrest suspected gang members if they were "loitering," which the ordinance defined as "remain[ing] in any one place with no apparent purpose." 527 U.S. 41, 47 (1999) (alteration in original). The Illinois Supreme Court had concluded that the ordinance was unconstitutional because it provided "absolute discretion to police officers to decide what activities constitute loitering." *Id.* at 61 (quoting *City of Chicago v. Morales*, 687 N.E.2d

No. 24-2927                                                    15

53, 63 (Ill. 1997)). The Supreme Court agreed, faulting the or-
dinance for "how much discretion the police enjoy in deciding
which stationary persons to disperse under the ordinance."
*Id.* at 61–62. The fact that the ordinance "[did] not permit an
arrest until after a dispersal order [had] been disobeyed" did
not save it because it did not provide "any guidance to the
officer deciding whether such an order should issue" in the
first place. *Id.* at 62. And hinging criminal liability on whether
someone had an "apparent purpose" for remaining in place
gave officers the discretion "to treat some purposes—perhaps
a purpose to engage in idle conversation or simply to enjoy a
cool breeze on a warm evening—as too frivolous" to be legal.
*Id.*

The buffer law is similarly susceptible to arbitrary
enforcement and is therefore unconstitutionally vague. The
State attempts to distinguish cases like *Bell* and *Morales* by
arguing that the buffer law's "specific, objective terms ensure
that it does not invite officers to enforce it in an arbitrary
manner"—but that argument only gets the State so far. It is
true that a law criminalizing approaching within 25 feet of an
officer is more objective than one criminalizing annoying
behavior. We also acknowledge that the buffer law requires a
do-not-approach warning before subjecting an individual to
arrest. But that does not immunize the buffer law from
arbitrary or discriminatory enforcement. As the plaintiffs
point out, the problem is more upstream: the buffer law offers
no "guidance to the officer deciding whether [a do-not-
approach] order should issue" in the first place. *See id.*
Without such guidance, any on-duty officer can use the buffer
law to subject any pedestrian to potential criminal liability by
simply ordering them not to approach, even if the pedestrian

is doing nothing more than taking a morning stroll or merely walking up to an officer to ask for directions.

The State offers no real rebuttal to this notion. Indeed, the State doubled down on the vast discretion afforded by the buffer law at oral argument. We asked counsel to explain when an officer could invoke the buffer law to tell someone to stop approaching. The answer? "If an officer is conducting their official duties, an officer may tell someone to stop approaching." For any reason? A good reason, a bad reason, a reason the officer just makes up? "Yes." Could an officer invoke the buffer law just because he had a bad breakfast? Again, counsel answered in the affirmative.[7] These responses highlight the problem. As the Supreme Court explained 60 years ago, a law that effectively says "a person may stand on a public sidewalk in [a city] only at the whim of any police officer of that city" is too vague to satisfy due process. *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90 (1965). The buffer law does just that. The Fourteenth Amendment will not tolerate a law subjecting pedestrians to arrest merely because a police officer had a bad breakfast—no matter how bitter the coffee or how soggy the scrambled eggs.

Undeterred, the State points to cases in which we and our sister circuits rejected vagueness challenges to statutes affording officers some level of discretion. But those cases are easily distinguished because the challenged statutes in each contained some form of guidance constraining officer discretion. In *Bell*, we upheld a portion of the challenged city ordinance that allowed police to order people to disperse based on likelihood of "substantial harm," but only after concluding that

---

[7] Oral Argument at 2:31, 2:39–2:55, 30:05–30:22.

the term was related to property damage and violence. 697
F.3d at 463. And in *United States v. Johnson*, we rejected the
argument that the Animal Enterprise Terrorism Act's defini-
tion of "animal enterprise," while technically broad enough
to encompass any grocery store, restaurant, or clothing store,
afforded law enforcement arbitrary discretion to prosecute
any property crime against such institutions as incidents of
animal enterprise terrorism. 875 F.3d 360, 370 (7th Cir. 2017).
That was because the Act also required that a person travel in
interstate commerce or use a facility of interstate commerce
for the purpose of damaging or interfering with an animal en-
terprise's operations, and, in connection with that purpose,
conspire to, threaten to, or actually cause bodily injury or tan-
gible property damage. *Id*. These additional elements acted as
safeguards against arbitrary enforcement. *See id.*

The State's out-of-circuit cases are similarly
distinguishable. In *United States v. Bronstein*, the D.C. Circuit
upheld language prohibiting making an "oration" or
"harangue" in the Supreme Court building because other acts
prohibited in the same one-sentence statute—such as
shooting a gun, setting off fireworks, or using loud or
threatening language—cabined the meaning of "oration" and
"harangue" to conduct that disrupted the Court's operation.
849 F.3d 1101, 1108–11 (D.C. Cir. 2017). And in *Horton v. City
of St. Augustine*, the Eleventh Circuit concluded that a law
prohibiting "perform[ing]" in a particular area of town
survived a facial vagueness challenge because it specifically
listed eight types of street performances that were outlawed,
thus clarifying what type of activity was prohibited. 272 F.3d
1318, 1330 (11th Cir. 2001).

18                                        No. 24-2927

The State offers no similar "narrowed construction" that could save the buffer law. *See Shuttlesworth*, 382 U.S. at 91 (discussing Alabama Court of Appeals' narrowing interpretation of Birmingham loitering law). And, given that the buffer law's terms are plain and unambiguous, we see no cause for restraint as the Indiana courts work out the kinks. *See City of Houston v. Hill*, 482 U.S. 451, 468 (1987) ("If the statute is not obviously susceptible of a limiting construction, then even if the statute has 'never [been] interpreted by a state tribunal ... it is the duty of the federal court to exercise its properly invoked jurisdiction.'" (alteration in original)) (quoting *Harman v. Forssenius*, 380 U.S. 528, 535 (1965)); *compare Trs. of Ind. Univ. v. Curry*, 918 F.3d 537, 539 (7th Cir. 2019) (explaining, in rejecting vagueness challenge to Indiana statute criminalizing transfer of fetal tissue, that it would be prudent to wait for the Indiana courts to interpret ambiguous terms like "transfer" and "any other part of an aborted fetus" instead of striking the law altogether).

Laws that "encourage arbitrary and discriminatory enforcement" are void for vagueness. *Kolender*, 461 U.S. at 357. Because that is precisely what Indiana's buffer law does, we agree with the district court that the plaintiffs are likely to succeed in their challenge to its constitutionality.

## C.  The Scope of the Preliminary Injunction

One final piece of business remains. The district court's September 27, 2024, preliminary injunction prohibits the defendants—the Indiana Attorney General, Marion County Prosecutor, and Marion County Sheriff—along with their "agents, servants, employees, and attorneys" from enforcing the buffer law "against any individual, corporation,

No. 24-2927                                                    19

association, or other entity until this case has been finally re-
solved."[8] On June 27, 2025, the Supreme Court held that fed-
eral courts lack the equitable power to issue universal injunc-
tions under the Judiciary Act of 1789 because "the universal
injunction lacks a historical pedigree." *Trump v. CASA, Inc.*,
606 U.S. ---, 145 S.Ct. 2540, 2554 (2025). Although an equitable
remedy like an injunction is "flexible," explained the Court,
its "protection extends only to the suing plaintiff[s]." *Id.* at
2551, 2557. Therefore, when considering the permissible
scope of an injunction, "the question is not whether an injunc-
tion offers complete relief to *everyone* potentially affected by
an allegedly unlawful act; it is whether an injunction will offer
complete relief *to the plaintiffs before the court*." *Id.* at 2557 (cit-
ing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Accordingly,
although we agree with the district court's decision to prelim-
inarily enjoin enforcement of Indiana's buffer law, the *CASA*
decision suggests that the *scope* of the injunction requires fur-
ther consideration.

The Supreme Court acknowledged in *CASA* that in some
situations, an injunction requiring the defendant to cease the
offending activity entirely may be the only way to provide
complete relief to the plaintiff. For example, in a nuisance case
involving a noisy neighbor blasting loud music, "the court
has only one feasible option: order the defendant to turn her
music down—or better yet, off." *Id.* Such an injunction would
no doubt incidentally benefit the entire neighborhood, yet it
would be permissible as the only way to provide relief to the
*plaintiff*, and only the plaintiff could enforce it. *Id.* "Extending
the injunction to cover all other similarly situated

---

[8] Dkt. 54 at 2–3.

individuals" is not appropriate if doing so would not "render [the plaintiff's] relief more complete." *Id.* at 2557–58.

The question, then, is whether the scope of the district court's preliminary injunction in this case was necessary to provide complete relief to the plaintiffs pending resolution on the merits. To the extent the plaintiff media organizations rely on information and observations from ordinary citizens going about their day as source material for stories, enjoining the buffer law's enforcement statewide may be necessary to provide the *plaintiffs themselves* with complete relief. After all, a "man on the street" interview could hardly take place if the man's presence on the street were dependent on the "moment-to-moment judgment of the policeman on his beat"—even if the journalist conducting the interview were protected from arbitrary enforcement of the buffer law. *Kolender,* 461 U.S. at 360 (citation omitted).[9]

Given the lack of briefing on these topics both before us and the district court, we "decline to take up these [questions] in the first instance." *CASA,* 606 U.S. ---, 145 S.Ct. at 2558. Instead, following the Supreme Court and our colleagues in the First and Fifth Circuits, we will leave it to the district court to "determine whether a narrower injunction is appropriate."

---

[9] *See also* David Bauder, *Detailed 'Open Source' News Investigations Are Catching On,* AP NEWS (May 8, 2022), https://apnews.com/article/open-source-media-investigations-d1093d4ea4e98a3ae21850196847c6e1 (explaining rise of "open-source" journalism based on data generated by others); Jesse Holcomb, *On TV, Few Amateur Journalists Get Credit for their Contributions to the News,* PEW RESEARCH CENTER (June 5, 2014), https://www.pewresearch.org/short-reads/2014/06/05/on-tv-few-amateur-journalists-get-credit-for-their-contributions-to-the-news/ (explaining that TV journalists often rely on the work of others).

No. 24-2927                                                      21

*Id.*; *see Doe v. Trump*, 142 F.4th 109, 112 (1st Cir. 2025); *United States v. Texas*, --- F.4th ----, 2025 WL 1836640, at *38 (5th Cir. July 3, 2025).

### III.   CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision to enjoin enforcement of the buffer law against the plaintiffs, but we REMAND for the district court to consider, through additional briefing or other means, the appropriate scope of injunctive relief.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

CERTIFIED COPY
A True Copy
Teste:

*Nathaniel Clodic*

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

August 5, 2025

*Before*

FRANK H. EASTERBROOK, *Circuit Judge*
MICHAEL B. BRENNAN, *Circuit Judge*
DORIS L. PRYOR, *Circuit Judge*

| | |
|---|---|
| No. 24-2927 | REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, et al., Plaintiffs - Appellees v. TODD ROKITA, et al., Defendants - Appellants |
| **Originating Case Information:** | |

District Court No: 1:23-cv-01805-JRS-MG
Southern District of Indiana, Indianapolis Division
District Judge James R. Sweeney, II

We **AFFIRM** the district court's decision to enjoin enforcement of the buffer law against the plaintiffs, but we **REMAND** for the district court to consider, through additional briefing or other means, the appropriate scope of injunctive relief. The above is in accordance with the decision of this court entered on this date. Costs awarded to Plaintiffs-Appellees.

*Christopher Conway*

Clerk of Court

form name: **c7_FinalJudgment**    (form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

August 27, 2025

To:   Kristine L. Seufert
      UNITED STATES DISTRICT COURT
      Southern District of Indiana
      United States Courthouse
      Indianapolis, IN 46204-0000

|  | REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, et al., |
|---|---|
|  | Plaintiffs - Appellees |
| No. 24-2927 | v. |
|  | TODD ROKITA, et al., |
|  | Defendants - Appellants |
| **Originating Case Information:** | |
| District Court No: 1:23-cv-01805-JRS-MG | |
| Southern District of Indiana, Indianapolis Division | |
| District Judge James R. Sweeney, II | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                          No record to be returned

form name: **c7_Mandate**     (form ID: **135**)